LEACH et al. v. OREGON SHORT LINE R. CO.

No. 1601 (81 Pac. 90).

1. EVIDENCE—RES GESTAE.—Declarations or acts sought to be introduced in evidence as part of the res gestae must be connected with or grow out of the main or principal transaction which is the subject-matter of the litigation, and must tend to elucidate and explain such transaction.

2. SAME—EXCLAMATIONS.—In an action against a railroad for the death of a brakeman, an exclamation of the conductor to another brakeman, made a few seconds after the accident, and while he was giving orders respecting the same: "My God! go back and see if you can find L. The bridge knocked him off"—was admissible as part of the res gestae.

3. MASTER AND SERVANT—ASSUMPTION OF RISK—STATEMENT OF DOCTRINE.—A servant by his contract of employment assumes only the natural and ordinary risks and dangers incident thereto, and such other unusual or extraordinary risks, due to defects in appliances and equipment, of which he knows, or which are so obvious that he will be presumed to have known of them. [1]

4. SAME.—An experienced brakeman who had been working on his run for eight or nine months on a freight train was transferred to a mixed train on which he had made two or three night trips, when he met his death while passing along an outside railing of a blind baggage car by coming in contact with the uprights of a bridge. His previous trips on the mixed train had given him no opportunity to appreciate the danger of passing along the railing while the car

[1] Garity v. B. B. & C. Mining Co., 27 Utah 534, 76 Pac. 556.

was passing over bridges, nor was his experience on freight trains such as to inform him of the narrow space between the sides of baggage cars and the uprights of the bridges. *Held*, that the brakeman had a right to assume that the railroad had so constructed its bridges as to permit him to perform his duties, and, in the absence of advice against passing along the railing while the train was passing over such bridges, did not assume the risk of the injury which he suffered. [2]

(Decided May 3, 1905.)

APPEAL from District Court, Fifth District; T. Marioneaux, Judge.

Action by Grace L. Leach individually, and as guardian *ad litem* of Lola Leach, a minor, against the Oregon Short Line Railroad Company. From a judgment for plaintiffs, defendant appeals.

AFFIRMED.

*P. L. Williams* and *Geo. H. Smith* for appellants.

*Snyder & Wright* and *Powers, Straup & Lipman* for respondents.

### APPELLANT'S POINTS.

It is not every declaration made at or immediately after an occurrence or transaction that constitutes it *res gestae,* but such statements in a proper case can only become *res gestae* where the conduct or action to which it is sought to attach legal significance, in which there is intrinsically none, until its whole tenor is made definite, is material; and it is by words accompanying the conduct that this tenor is more fully and precisely defined. Thus it is that the words spoken are not in themselves used as testimony, but they are considered merely in relation to giving to the conduct or occupation an adverse significance. How was he connected with the transaction in any way, and therefore, how could this testimony

---

[2] Pidcock v. Ry. Co., 5 Utah 612, 19 Pac. 191, 1 L. R. A. 131.

become *res gestae* or anything else but mere hearsay? Where in the record does it appear that the conductor was acting within his employment or had authority to bind the defendant by any act or statement after a transaction had taken place, and in which he was not an actor? And yet all of these things are necessary to make the testimony admissible. (1 Greenleaf [16 Ed.], 184; *Durken v. Cent. Pac. R. R. Co.*, 69 Ca. 533, 58 Am. Rep. 562; *Vicksburg & M. R. Co. v. O'Brien*, 119 U. S. 99; *Packet Co. v. Clough*, 20 Wall. 546; *O.; etc., R. v. Stein*, 133 Ind. 250; *Cent. Ry. et al. v. Maltby*, 90 Ga. 632; *Griffin v. Montgomery, R. R. Co.*, 26 Ga. 111; *Robinson v. Filchburg R. R. Co.*, 7 Gray 92; *Alabama, etc., R. R. v. Hawk*, 72 Ala. 112; *Williamson v. Cambridge R. R. Co.*, 10 N. E. 790; *Adams v. Hannibal R. R. Co.*, 74 Mo. 553; *Patterson v. St. L. Wabash, etc., Ry. Co.*, 54 Mich. 91, 18 A. & E. R. R. Cases 130; *Empire-Mill Co. v. Lovell*, 77 Iowa 100; *Adams Ex. Co. v. Harris*, 120 Ind. 73; *Sweetland v. Ill. etc., Tel. Co.*, 27 Iowa 433; *Penn. R. R. Co. v. Brooks*, 57 Pa. St. 339; *St. L. I. M. & S. R. R. Co. v. Sweet*, 27 Ark. 287; *San Antonio & A. P. R. R. Co. v. Robinson*, 73 Tex. 277; *Curl v. Chi. R. I. & Pac. R. R. Co.*, 63 Iowa 417, 11 A. & E. R. R. Cases 85.)

We next submit that the court erred in refusing to charge the jury as requested by defendant in its request No. 4, and in failing and refusing to instruct the jury at all upon the subject of assumed risk of the servant in the performance of his work. By the answer in this case the defense of assumed risk was affirmatively pleaded.

Under this state of facts it was error for the court to refuse the instruction requested, which embodied this defense, and to fail to charge at all upon this question. To be sure, the jury may not have found as a fact that it was a risk incident to the employment, or that deceased knew of the danger or should have known of it, but clearly here were facts upon which such a finding could properly be based and from which certain inferences could justly be drawn, and it was therefore not for the court to take that matter out of the hands of the jury. The defendant was entitled to have them pass upon

that matter of defense. (*Downey v. Gemini Mining Company,* 24 Utah 436; *Kendall v. Brown,* 74 Ill. 232; *Tex. Pac. Rd. Co. v. Bryant,* 8 Tex. Civil App. 134; *Pa. Co. v. Ebaugh,* 152 Ind. 531; *Miner v. Conn. River Rd. Co.,* 153 Mass. 398, 26 N. E. 994; *State v. Gibbons,* 10 Iowa 117; *Chicago, Ind. & L. Ry. Co. v. Glover,* 154 Ind. 584, 57 N. E. 244; *Woodell v. W. Va. Improvement Co.,* 38 W. Va. 23; s. c., 17 S. E. 386; *Pierce v. Calvin,* 82 Fed. 550; *Mundle v. Hill Mfg. Co.,* 86 Me. 400; *Foley v. Jersey City Elec. Light Co.,* 54 N. J. 411, 24 Atl. 487; *Day v. C. C. C. & St. L. Rd.,* 137 Ind. 210, 36 N. E. 854; *Klatt v. N. C. Foster L. Co.,* 92 Wis. 622; s. c., 66 N. W. 791; *Garety v. King,* 41 N. Y. Supp. 633; *Ragon v. Toledo Ann Arbor & N. Mich. Rd. Co.,* 97 Mich. 265; s. c., 54 N. W. 612.)

"It is a rule of universal acceptance by the courts of this country that an employee assumes all the ordinary dangers of his employment which are known to him or which by the exercise of ordinary diligence would have been known to him. It is alike the duty of the employer and the employee to be diligent in the discharge of their respective duties for the avoidance of personal injury to the other, and both are alike bound to know, and will be chargeable as knowing all the facts and conditions that a person of ordinary caution and prudence in a like situation would have discovered. Neither may close his eyes nor carelessly neglect observation and inquiry for the safety of the employee, and find immunity on the ground that he did not have actual knowledge of the danger. In such cases constructive knowledge has the same force and effect as actual knowledge." (*Louisville & Nash. Rd. Co. v. Hall,* 99 Ala. 112, 8 So. 371; *A. T. & S. F. Rd. v. Alsdorf,* 47 Ill. App. 200; *Louisville Rd. Co. v. Shivell,* 13 Ky. Law Rep. 902, 18 S. W. 944; *Hewett v. Flint & P. M. Rd. Co.,* 67 Mich.——, 34 N. W. 659; *Hill v. Meyer Bros. Drug Co.,* 140 Mo. 433, 41 S. W. 909; *Benjamin Atha & I. Co. v. Costello,* 63 N. J. Law 27, 42 Atl. 766; *Ferguson v. Phoenix Cotton Mills,* 106 Tenn. 236, 61 S. W. 53; *Wells v. Coe,* 9 Colo. 159, 11 Pac. 50; *Craven v. Smith,* 89 Wis. 119, 61 N.

W. 317; *Taylor-Craig Corp. v. Hoge,* 69 Fed. 581; *U. P. R. R. v. Monden,* 50 Kan. 539, 31 Pac. 1002; *Haley v. Jump River Lumber Co.,* 81 Wis. 412, 51 N. W. 321, 956; *Ill. C. R. R. v. Spoeleder,* 90 Ill. App. 590; *Boyd v. Harris,* 176 Pa. 486, 35 Atl. 222; *Lovejoy v. Boston & R. R. Corp.,* 125 Mass. 79, 28 Am. Rep. 206; *Thain v. Old Colony R. R. Co.,* 161 Mass. 353, 47 N. E. 309; *Scedmore v. M. L. S. &W. R. R. Co.,* 89 Wis. 188, 61 N. W. 765; *Mo. Pac. R. R. Co. v. Sommers,* 71 Tex. 700, 9 S. W. 741, 78 Tex. 439, 14 S. W. 779; *Phelps v. C. & W. M. R. R.,* 122 Mich. 171, 81 N. W. 101; *Benson v. N. Y. N. H. & H. R. R. Co.,* 49 Atl. 689; *Fisk v. Fitchburg R. R. Co.,* 158 Mass. 238, 33 N. E. 510.)

RESPONDENT'S POINTS.

At the trial the defense was, in part, that Leach fell off. The declaration of Hawkins, made at the time and before he had time to reflect upon its consequences, was a material part of the *res gestae;* it explained a disputed point. It occurred while the matter was happening, before they stopped the train or picked up Leach. Counsel misstate the rule, when they say the conductor must have been acting in the line of his authority before his statement would bind the company, after the transation had happened. As a contractual statement, this would be true, but as *res gestae,* the rule at least, as laid down by the better reasoned cases, is to the contrary. (*Durkee v. Cent. P. Ry. Co.,* 69 Cal., 11 Pac. 130.)

Subsequent declarations are admissible though not precisely coincident. (24 Am. and Eng. Enc. Law, [2 Ed.], p. 665, n. 2 and cases.) The text is fully borne out by the cases, see especially: (*Ry. Co. v. Buck,* 116 Ind. 566, 19 N. E. 453, and cases; *Gundy v. Humphries,* 35 Ala. 624; *Slavens v. U. P. Ry. Co.,* 97 Fed. 255-62; *Ry. Co. v. Berry,* 2 Ind. App. 427, 28 N. E. 714; 21 Am. and Eng., Enc. [1 Ed.], p. 99, 102 Subd. 2; *Leahey v. Ry. Co.,* 97 Mo. 165, 10 S. W. 58; *Ins. Co. v. Mosley,* 8 Wall. 397, 19 L. Ed. 437.)

In some jurisdictions, statements made in answer to in-

quiries are inadmissible (*Louisville Ry. Co. v. Pearson*, 97 Ala. 211), while in others this distinction is not observed (*Leahy v. Ry. Co., supra; Ry. Co. v. Berry, supra.* It is unnecessary to pursue either line, however, in this case, or to attempt to reconcile them, because this case presents no such circumstance. Here the remark of Hawkins was the spontaneous outburst explaining his return to the car, his orders to Harris, and his action in stopping the train, and was clearly admissible. (1 Greenleaf Ev. 108; *Leahy v. Ry. Co., supra;* 24 Am. and Eng. Enc. [2 Ed.] 664, n. 6, 665 n. 2; *Dunbar v. McGill*, 37 N. W. 285-7; *Ry. Co. v. Coyle*, 55 Pa. St. 396; *Ott v. Cunningham*, 58 Pac. 126; *Sullivan v. City*, 13 Utah 122; *People v. Kessler*, 13 Utah 69-78, *et seq.*)

It is not essential to the admission of declarations when they form parts of acts, as *res gestae*, that they be done by parties in interest. It is sufficient if they be done by actors so connected with the principal fact as that the declaration forms a part of it. (*Stephanie v. Ry. Co.*, 19 Utah 196; *Openshaw v. Ry. Co.*, 6 Utah 137.) Moreover, it has become elementary that declarations made by servants and agents of parties are admissible. (21 Am. and Eng. Enc. [1 Ed.], p. 108; *Lindborg v. Mining Co.*, 9 Utah 163; *Railroad Co. v. O'Brien*, 119 U. S. 99, 30 L. Ed. 199. The *Lindborg* case was not overruled upon this point by the *Kessler Case*, 13 Utah 69.

There was no evidence to justify the request No. 4. 1. No evidence that this was one of the ordinary risks. 2. No evidence that this was a risk incident to the business. On the contrary, the evidence shows, if it shows anything on this subject, that this was an extroardinary risk. The servant does not assume any such risk. (*L. N. & C. Co. v. Wright*, 115 Ind. 378, 16 N. E. 145, and note; s. c., 17 N. E. 584; *A. T. & S. F. Ry. Co. v. Rowan*, 104 Ind. 88, 3 N. E. 267; *St. L. Co. v. Irwin*, 37 Kan. 201, 16 Pac. 146; *Boss v. U. P. Ry. Co.*, 49 N. W. 655-7; *Illinois Ter. Ry. Co. v. Thompson*, 71 N. E. 328; *Garity v. B. B. & C. M. Co.*, 76 Pac. 556.)

The doctrine of assumed risk arises out of the contract of

hiring and is bottomed entirely upon the existence of knowledge, either actual or constructive or imputed on the part of the servant as to the existence of the alleged facts from which the risk essentially flows. If there was an absence or lack of knowledge, either actual or implied, there was no assumption of risk, and that question is not in the case. There is no assumption of risk unless the danger is known. (*Scanlan v. Ry. Co.*, 18 N. E. 209; *Garity v. Bullion B. & C. M. Co.*, 76 Pac. 556.)

The proposition that there can in any case be any assumption of the risk flowing from the negligence of the master has no support in this State. The contrary is the rule. Negligence of the master is not one of the risks assumed by the servant. (*Hone v. Mammoth M. Co.*, 27 Utah 168-178; *Jenkins v. Same*, 24 Id. 513, 522; *Handly v. Daly M. Co.*, 15 Id. 176, 187; *Wright v. Southern Pac. Co.*, 14 Utah 383, 348; *Pool v. Same*, 20 Utah 210-22; *Garity v. B. B. & C. M. Co.*, 76 Pac. 556; *Mathews v. Daly-West M. Co.*, 27 Utah 193-99; Bailey, Master's Liability, 151-155.) Where there is a lack of knowledge or inability to appreciate the danger, or it is latent, there is not assumption of the risk as a matter of law. (*Moyes v. Ogden, etc. Co.*, 77 Pac. 610.) The servant has the right to presume and to rely upon the presumption that the master has performed its duty and supplied proper appliances, and will not expose him without warning to unseen, hidden, or unknown dangers. (*Pidcock v. Ry. Co.*, 5 Utah 612-17, 20 Am. and Eng. Ency. Law [2 Ed.], p. 73; *Louisville, etc. Ry. Co. v. Berry*, 2 Ind. App. 427, 28 N. E. 714.) The maintenance of such structures is negligence *per se*. (*Pidcock v. Ry. Co., supra; Ry. Co. v. Thompson*, 71 N. E. 328; *Ry. Co. v. Stevens*, 59 N. E. 577; *Choctaw, etc. Ry. Co. v. McDade*, 191 U. S. 64-7.)

The request asked for confuses the doctrine of assumed risk with that of contributory negligence. "The question of assumption of risk is quite apart from that of contributory negligence." (*McDade Case*, 191 U. S. 68.) The request not stating the law there was no error in its refusal and it follows that there was no error in the failure of the court to charge

upon the subject of assumed risk. The court is not bound to modify, limit, or qualify an instruction so as to remedy its defects. The court may refuse the request entirely and leave the party to assume the hazard of its entire correctness. (11 Ency. Pl. and Pr., 236 and citations.) When one hands the court a request that does not state the law, it is, so far as the court is concerned, the same as if no request was made, for the court must refuse to so instruct. It is well settled that a failure to charge upon a particular point, in the absence of request, does not constitute error. (11 Ency. Pl. and Pr., 217 and citations.)

### STATEMENT OF FACTS.

Plaintiff brought this action on her own account, and as guardian *ad litem* for her minor child, to recover damages against defendant company for the death of John Leach, the husband and father of the plaintiffs, alleged to have been caused by the negligence of the defendant. The complaint charges that said John Leach was a brakeman in the employ of defendant, and that it was negligent in failing to exercise care to furnish him a reasonably safe place to work. The acts of negligence relied upon for a recovery are that defendant negligently maintained the uprights of a bridge dangerously near the track, and negligently equipped its car with insufficient appliances or means to enable its employees to pass along the side of the same in the discharge of their duties. The answer of defendant, after admitting the employment, denied generally all the allegations, and affirmatively pleaded contributory negligence, and the assumption of risk on the part of said John Leach. The trial of the case resulted in a verdict for plaintiff in the sum of $10,000. From the judgment entered on the verdict, this appeal is taken.

The record in this case discloses about the following facts: John Leach was forty-six years of age, and an experienced railroad brakeman, having worked at this business for more than two years. At the time of his death, April 11, 1902, he had been working as brakeman for about eight or nine months between Juab, Utah, and Frisco, Utah. His run on

the south end was between Juab and Frisco, leaving Juab about eleven o'clock at night, and returning, when on time, the second morning thereafter about six o'clock. Sometimes the train would be late, and he would not get back until late in the afternoon. Prior to April 1st his run was on a freight train, but beginning on the latter date it had been on a mixed train; that is, a train composed of freight and passenger cars, the latter being attached to the rear of the train. On the night in question the train was returning from Frisco, and consisted of nine cars, including the coaches. Immediately behind the freight cars was the combination or blind-baggage car. This car was divided into two parts that were separated and unconnected. The forward end is used for the United States mail, and is in charge of a United States mail agent. Trainmen are not allowed in this part of the car. The rear portion is the baggage compartment. There are two sliding doors, one on either side of the baggage compartment, and an end door at the rear. On the left-hand side of this car as it was going forward an iron foot rail extended from the side door along the side of the car around the mail end to the forward platform, and a hand railing near the top of the car extended the same way. The foot rail was one inch in width, and stood out two inches from the side of the car, making a space of only three inches from the side of the car to the outside of the railing. These railings were the only means provided for the trainmen to walk around the side of the car in going to and from the forward part of the train or to the coaches. The men in passing around this car would hold onto the top rail with their hands, and, with their feet on the lower rail, walk sidewise back and forth. The hand rail was five feet and seven inches above the foot rail. The bridge on which Leach, the deceased, was killed, is known as the "Howe Truss Bridge," and had upright sides, but no top or overhead work. The extreme height of the uprights of this bridge above the rails of the track was ten feet. The distance between the sides of the combination car referred to, when passing over the bridge, and the uprights of the bridge, was two feet, two and one-half inches. On the night of the accident the conductor, when the

train was in the vicinity of the bridge, went to Leach and requested him to go out and see if the ties were all right, and if they had shifted, and to do this before the train reached the bridge. This referred to a car load of ties. Leach went forward into the baggage car, opened the side door of the baggage car, and went out on the side by means of the railings hereinbefore described, and closed the door after him. Hawkins, the conductor, soon after opened the door and looked out; saw Leach, who was within a few feet of the forward end of the car. Hawkins then swung out on the rail on the side of the car and started forward, and when he was about halfway between the baggage car door and the mail car door he heard, so he says, Leach's lantern crash. The conductor then immediately returned inside of the baggage car, sprung the air and gave the signal to stop, and from there he hurried on into the smoking car. And there is evidence in the record which tends to show that when he entered the smoker he made the following statement to one Harris: "My God! Go back and see if you can find Leach. The bridge knocked him off." The record further shows that Hawkins, from the time Leach fell or was knocked off the car, acted with promptness and celerity. Quoting his own language, as it appears in the record, he says: "Well, it was done as quick as I could do it." The train was stopped, and the train crew went back and found Leach on the bridge by the side of the track, and about two-thirds of the way from the south end. His head was crushed and some of his limbs were broken, from which injuries he then and there died.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Plaintiff read to the jury the deposition of one William J. Harris, who, at the time of the accident, was a brakeman on this same train with Leach. The following portions of the deposition were admitted, over defendant's objection: "Mr. Leach and I were sitting in the same seat in the smoking car.

He [referring to Hawkins, the conductor] said, 'Leach, I want you to go out overhead and see how those ties are before we pass over the bridge.' Leach said, 'All right, sir,' and went out, passed through the baggage car, opened the baggage car door, and by that time we must have been to the bridge. I still sat in my seat where I was until Mr. Hawkins came to me and said: 'My God! Go back and see if you can find Leach. The bridge knocked him off.' "

Appellant contends that these statements of Hawkins, and, in particular, his declaration wherein it is claimed he said: "My God! Go back and see if you can find Leach. The bridge knocked him off"—were immaterial and incompetent, for the reason that they are hearsay, and that it was error for the court to admit them. On the other hand, respondent insists that they were a part of the *res gestae,* and were therefore admissible on that ground. While there is no fixed and settled rule by which the admissibility of acts done or declarations made in relation to a transaction, under the doctrine of *res gestae,* shall be determined, yet the great weight of authority holds that the declarations or acts sought to be introduced in evidence as part of the *res gestae* must be connected with or grow out of the main or principal transaction which is the subject-matter of the litigation, and must tend to elucidate and explain such transaction. (Gillett on Ind. & Collat. Ev., 242-247; 2 Jones on Ev. 347.) In *Lousiville, etc., Ry. Co. v. Buck,* 116 Ind., on page 576, 19 N. E., page 458, 2 L. R. A. 520, 9 Am. St. Rep. 883, the court tersely, and we think, correctly, stated the general rule as follows:

"It is not always easy to determine when declarations having relation to an act or transaction should be received as part of the *res gestae,* and much difficulty has been experienced in the effort to formulate general rules applicable to the subject. This much may, however, be safely said: that declarations which were the natural emanations or outgrowths of the act or occurrence in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made, so nearly con-

temporaneous as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily to exclude the idea of design or deliberation,.must, upon the clearest principles of justice, be admissible as part of the act or transaction itself."

And the court further says:

"Any other rule would in many instances operate to defeat the accomplishment of justice by excluding evidence of the most trustworthy character."

McKelvey in his work on evidence, p. 278, says:

"The ground of reliability upon which such declarations are received is their spontaneity. They are the extempore utterances of the mind under circumstances and at times when there has been no sufficient opportunity to plan false or misleading statements; they exhibit the mind's impressions of immediate events, and are not narrative of past happenings; they are uttered while the mind is under the influence of the activity of the surroundings."

In 24 A. & E. Ency. Law, 665, it is said:

"The principle upon which the admission of such evidence rests is that the declarations may be made so soon after the happening of the principal fact, and be so intimately interwoven therewith by the surrounding circumstances, as to raise a reasonable presumption that they are the spontaneous utterance of thoughts created by and springing out of the transaction itself, and to exclude the presumption that they are the result of premeditation or de-design." (Note 2, and cases cited.)

In 1 Whart. on Ev., the author says:

"It is in any view clear that the declarations which are the immediate accompaniments of an act

> are admissible as part of the *res gestae,* remember-
> ing that immediateness is tested by closeness, not of
> time, but of causal relation, as just explained."

Applying the facts in this case to the foregoing principles, we are clearly of the opinion that the statements of Hawkins as to how the accident happened, which, the record shows, were made but a few seconds, at most, after the accident occurred and while he was giving orders in the line of his duty respecting the accident, were admissible in evidence as a part of the *res gestae.* There is evidence in the record which tends to show that, when Hawkins returned to the car and made the statements attributed to him, his face was covered with blood. And this testimony is not wholly denied, for Hawkins admitted on cross-examination that, at the time he heard Leach's lantern drop, "a little white speck," "a little fleshy substance," which he supposed was a portion of Leach's brain, struck him in the forehead. This circumstance, and the fact that he knew that Leach in all probability had been hurled to his death, together with the character of the expressions or statements attributed to him when he informed Harris of the accident, would indicate that he was laboring under considerable excitement, and that the declarations under consideration, if made at all by him, were the emanations or outgrowth of the occurrence, and the instinctive and natural outburst of expression explaining what had just happened to Leach, which clearly brings them within the rule as declared by the great weight of authority. In the case of *The Ohio, etc., R. W. Co. v. Stein,* 133 Ind. 243, 31 N. E. 180, 32 N. E. 831, 19 L. R. A. 733, the plaintiff was hurt in a collision of some cars. The engineer immediately after the injury came a car's length to see the plaintiff, and the conversation there had between them was admitted in evidence, and the court held it was not error. The court, in a well-considered opinion, discusses the doctrine of *res gestae,* and reviews many cases in which the question was involved and discussed, and in the course of the opinion says:

"The case at our bar differs from those cited in essential particulars, for here the declarations were made at the time and place where the collision they referred to occurred, and they illustrated the event, and were made while all who participated in it were present. We may therefore well adjudge that there was no error in overruling the appellant's objections without denying the doctrines asserted in our cases. The latest decision of our court upon the question is that given in the case of *Louisville, etc., Ry. Co. v. Buck,* 116 Ind. 566, 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883. In that case the conductor of the train on which the intestate of the plaintiff was employed as a brakeman was on the 'caboose' when he received notice that the deceased had been injured while coupling cars, and he immediately ran forward and found the deceased under the rear end of the second car from the engine. The conductor, when he took the deceased from under the car, asked, 'How did this happen' and the deceased fully described the cause of the accident. The court held that this testimony was competent, and cited many cases in support of its conclusion." (*Hanover Ry. Co. v. Coyle,* 55 Pa. 396; *McLeod, Receiver, v. Ginther's Adm'r,* 80 Ky. 399; *Leahy v. Cass Ave. & F. G. Ry. Co.,* 97 Mo. 165, 10 S. W. 58, 10 Am. St. Rep. 300.)

Appellant requested the court to give to the jury the following instruction, which was refused: "You are further instructed that the servant, upon entering the employment of the master, assumes all the ordinary risks incident to his employment; and if the death of the deceased, John Leach, was occasioned by a risk which was incident to his business as a brakeman, the plaintiffs here cannot recover in this action. And you are further instructed that if you believe from the evidence that the bridge in question was not a reasonably safe place, in view of the equipment of the baggage car and the

manner in which brakemen were required to discharge their duties, and that the deceased, prior to the accident, by exercising such care and prudence in informing himself of the situation of his master's premises as would have been exercised under the same circumstances by a man of ordinary prudence, could have learned, or did actually know, that the said place was not reasonably safe, then, in that event, the risk of being injured by coming in contact with the bridge in the manner claimed by plaintiffs here was a risk incident to the business in which the said John Leach was engaged, and for his death, under such circumstances, defendant would not be liable." The refusal of the court to give the foregoing instruction is now assigned as error. The court however, in stating the issues, instructed the jury as follows: "The plaintiffs claim that the space between the upright portion of the bridge and the foot rail was insufficient to enable the said Leach to go safely along said foot rail, and that by reason of such insufficient space the place where said Leach was engaged in performing his work at the time of the accident was not a reasonably safe place." The court also gave the following instruction: "If you believe from the evidence that the deceased was not thrown from the car because of coming in contact with the upright portion of the bridge, but that he lost his hold and fell, that in such case your verdict must be for the defendant." The court, by giving these instructions to the jury, limited plaintiff's right to recover to the alleged negligence of defendant in maintaining the upright portions of the bridge too close to the railroad track, and thereby rendering the space between such upright timbers and braces of the bridge and the hand and foot railings on the side of the baggage car insufficient to enable the deceased, Leach, while in the discharge of his duties, to pass and repass along said railings when the train was passing over the bridge. The doctrine of assumed risks arises out of the contractual relations existing between master and servant. The servant in his contract of employment assumes the natural and ordinary risks and dangers that are incident to or arise out of the work which under his contract he is called upon to

perform. These risks and hazards, and these only, the parties are presumed to have in mind when they enter into the contract. If, however, there are other risks of unusual or extraordinary character connected with the service or work in which the servant is engaged, that are due to defects in the appliances and equipments used in the operation of the business, and are known to the servant, or are so open and obvious that he will be presumed to have knowledge of their existence, and he continues, without objection, to use such defective appliances and equipments, he assumes the extra risks and hazards arising therefrom. In the case of *Texas & Pac. Ry. Co. v. Archibald,* 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, the court says:

"The employer, on the one hand, may rely on the fact that the employee assumes the risks usually incident to the employment. The employee, on the other hand, has the right to rest on the assumption that the appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business or because by ordinary care he might have known of the methods, and inferred therefrom that danger of unsafe appliances might arise."

The Supreme Court of the United States, in the case of *Choctaw, etc., R. R. Co. v. McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, again declared this same doctrine as follows:

"The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume risks of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing ap-

pliances necessary for its operation. This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus, in the face of knowledge and without objection, without assuming the hazard incident to such situation." (*Davidson v. Cornell et al.*, 132 N. Y. 228, 30 N. E. 573; *Garity v. B. B. & Co.* [Utah], 76 Pac. 556; Shearman & Redfield, Neg., 185; Bailey, Mast. Liab., 150-155; 1 Labatt, Mast. and Serv., 260.)

Now, the record in this case shows that Leach, at the time he was killed, was making his third or fourth trip as brakeman on this "mixed" train, which, passed over the bridge in question and others of a like character on this route, in the nighttime. And there is absolutely no evidence in the record which goes to show, and no fact or circumstance from which it can be inferred, that Leach had, at any time prior to the accident which cost him his life, passed along the outside of the baggage car by means of the railings referred to while the train was passing over this or any other bridge of the same kind and structure. Nor is it shown that he had any knowledge of the close proximity of the railings on the baggage car to the upright portions or sides of the bridges along the route on which he was brakeman. But, on the contrary, the record shows that he had made but a few trips on this "mixed" train, and on each occasion passed over these truss bridges in the nighttime, and at a rate of speed of from twenty to twenty-five miles per hour, which gave him no opportunity whatever to know or appreciate the danger of passing along the hand and foot railings on the baggage car while it was passing over the bridges referred to. Neither is it shown, nor can it be inferred from the evidence in the case, that Leach's experience as a brakesman on freight trains before he went to work on the mixed train was such as to inform him of the narrow space between the sides of the combination baggage car and the upright portions of the bridges. The evidence tends to

show that the brakeman on trains made up exclusively of a
caboose and freight cars, in going back and forth along the
train, would pass through and over the tops of the cars, and
not climb around on the sides thereof, as they are com-
pelled to do on the combination or blind-baggage cars. When
the defendant tranferred Leach from the trains made up ex-
clusively of freight cars and a caboose, and put him to work
on the mixed train, he had a right to assume, and to act upon
such assumption, that it had so constructed and maintained
its roadway and bridges that he could perform his duties with
reasonable safety; and if the bridges, or any of them, were too
narrow to enable him to pass around the sides of the baggage
car with reasonable safety on the railings provided for that
purpose while the train was passing over such bridges, it was
the duty of defendant to advise him of that fact. In the case
of *Texas & Pac. Ry. Co. v. Archibald, supra* (170 U. S. 665,
18 Sup. Ct. 777, 42 L. Ed. 1188), the court says:

> "In assuming the risks of the particular service
> in which he engages, the employee may legally as-
> sume that the employer, by whatever rule he elects
> to conduct his business, will fulfill his legal duty
> by making reasonable efforts to furnish appliances
> reasonably safe for the purposes for which they are
> intended; and whilst this does not justify an em-
> ployee in using an appliance which he knows to be
> defective, or relieve him from observing patent de-
> fects therein, it obviously does not compel him to
> know or investigate the employer's modes of busi-
> ness, under the penalty, if he does not do so, of
> taking the risk of the employer's fault in furnishing
> him unsafe appliances." (*Louisville, etc., Ry. Co.
> v. Wright,* 115 Ind. 378, 16 N. E. 145, 17 N. E.
> 584, 7 Am. St. Rep. 432; *Baltimore, etc., Ry. Co. v.
> Rowan,* 104 Ind. 88, 3 N. E. 627; *St. Louis, etc.,
> Ry. Co. v. Irwin* [Kan. Sup.], 16 Pac. 146, 1 Am.
> St. Rep. 266; *Bass v. Northern Pac. Ry. Co.* [N.
> D.], 49 N. W. 655, 33 Am. St. Rep. 756; *Ill. Terr.
> Ry. Co. v. Thompson* [Ill.], 71 N. E. 328; *Pidcock*

*v. Ry. Co., 5 Utah 612, 19 Pac. 191, 1 L. R. A. 131; 20 A. &. E. Ency. Law [2 Ed.], p. 73; Chicago & A. R. Co. v. Stevens [Ill.], 59 N. E. 577; Choctaw, etc., Ry. Co. v. McDade, 191 U. S. 64-67, 24 Sup. Ct. 24, 48 L. Ed. 96.)*

There are two propositions contained in the instruction asked for by appellant. The first is, if the death of Leach was occasioned by a risk which was incident to his business as brakeman, the plaintiffs cannot recover. And the second is, if he knew, or by the exercise of ordinary care and prudence would have known, that the place where he was killed was not reasonably safe, the defendant would not be liable. As to the first proposition, the facts and circumstances show that the risk was not such as Leach was legally bound to know or anticipate when he went to work on this "mixed" train. And the second proposition contained in the instruction does not correctly declare the law applicable to the facts in this case. It is not claimed that Leach received any instructions respecting the close proximity of the sides of the bridge to those of the baggage car. And, as we have hereinbefore stated, he had a right to assume that the space between the baggage car and the uprights and the braces of the bridges was sufficient to enable him to pass and repass along the sides of the car in the performance of his duties with reasonable safety. Under the law as declared by the foregoing decisions and as announced by the text-writers, the burden of inspection was not on him to ascertain if there were any defects in the roadway, or in the structure of the bridges, which would tend to make of the service in which he was engaged one of extraordinary danger, as the foregoing instruction asked for by appellant would imply. The court instructed the jury very elaborately upon the question of negligence, and of the degree of care required of both appellant and the deceased, and the instructions, as a whole, were as favorable to the defendant as the facts in the case warranted.

We find no reversible error in the record. The judgment is therefore affirmed; the costs of this appeal to be taxed against appellant.

BARTCH, C. J., and ARMSTRONG, District Judge, concur.