## FORT WAYNE AND WABASH VALLEY TRACTION COMPANY v. ROUDEBUSH, ADMINISTRATRIX.

[No. 21,215. Filed June 4, 1909. Rehearing denied, October 15, 1909.]

1. PLEADING.—*Demurrer.—Admissions by.*—A demurrer admits the truth of all facts well pleaded. p. 61.
2. PLEADING.—*Complaint.—Master and Servant.—Interurban Railroads.*—A complaint alleging that by custom as well as by schedule defendant interurban railroad company started its first car from LaFayette at 6 o'clock a. m. to Battle Ground and arriving at LaFayette on its return at 7 o'clock a. m., that defendant at 6:38 o'clock a. m., without notice to the plaintiff's decedent who was the motorman of the first car, started a second car without orders to stop at the switch south of a sharp curve about the middle of the line, that decedent's car had the right of way, that as decedent was rounding such curve, ignorant of the approach of the second car, he collided with such second car, sustaining fatal injuries, states a cause of action. pp. 61, 66.
3. TRIAL.—*Interrogatories.—Interurban Railroads.—Negligence.*—Answers to interrogatories showing that the decedent motorman ran his car from LaFayette to Battle Ground, starting at 6 o'clock a. m., that defendant interurban railroad company started a special car from LaFayette upon the same track at 6:38 a. m., that decedent left Battle Ground, on schedule time, without any knowledge of such special car, and in rounding a sharp curve about midway between such points his car collided with the special, killing him, do not overturn a general verdict for the plaintiff. p. 61.
4. MASTER AND SERVANT.—*Interurban Railroads.—Negligence Concurring with that of Fellow Servant.*—An interurban railroad

company whose negligence concurs with that of a servant in producing a fellow servant's death, is liable therefor. pp. 62, 66.

5. EVIDENCE.—*Declarations.—Res Gestae.—Interurban Railroads.—Collisions.*—In answer to the question: "How did this terrible thing occur?" asked of a motorman while lying in a wreck one minute after the happening thereof, his answer: "I should have had a clear track until 7:30," is admissible as a part of the *res gestae.* p. 63.

6. TRIAL.— *Instructions.— Master and Servant.— Assumption of Risk.—Harmless Error.*—An instruction that a servant assumes all obvious risks of his service but that he "does not assume, in his employment, hazards, if any, which are the result of the negligence of the master," is incorrect, but is harmless, where the plaintiff's decedent was killed by defendant interurban railroad company's running of a special car into decedent's car, without notice. p. 64.

7. MASTER AND SERVANT.—*Assumption of Risk.—Master's Negligence.*—A servant assumes all risks known to him, including those arising from the master's negligence, except where such master's negligence consists in the violation of a statutory duty. p. 64.

8. TRIAL.— *Instructions.— Applicability.— Interurban Railroads.— Special Cars.—Negligence.*—An instruction that if the motorman of a regular car was killed by the negligence of the motorman of a special car the company would not be liable, is inapplicable, where it is shown that the company started the special car late, without any order to side-track the car at a proper place before meeting the regular car which was approaching on schedule time, its motorman having no knowledge of such special car. p. 65.

From Superior Court of Tippecanoe County; *Jere West,* Special Judge.

Action by Atlanta Roudebush, as administratrix of the estate of Charles Roudebush, deceased, against the Fort Wayne and Wabash Valley Traction Company. From a judgment on a verdict for plaintiff for $8,000, defendant appeals. *Affirmed.*

*Kumler & Gaylord,* for appellant.

*Addison C. Harris* and *Charles E. Thompson,* for appellee.

MONTGOMERY, C. J.—Appellant prosecutes this appeal from a judgment of $8,000 recovered by appellee as administratrix of the estate of Charles Roudebush, deceased, for the

death of said decedent on account of the alleged wrongful act of appellant.

The errors assigned are: (1) Overruling appellant's demurrer to the complaint; (2) overruling appellant's motion for judgment in its favor on the answers of the jury to interrogatories, notwithstanding the general verdict; (3) overruling appellant's motion for a new trial.

The condensed allegations of the complaint, omitting formal matters, are, in substance, as follows: That appellant is a corporation, and on May 23, 1906, was engaged in operating a single track electric interurban railroad seven miles in length between the city of LaFayette and Battle Ground; that on and before said date it had in use two large and heavy passenger-cars known as No. 24 and No. 251, capable of making a speed of forty miles per hour, and which were usually run between said stations at a speed from twenty to thirty miles per hour; that Charles Roudebush was in appellant's employ as motorman, sometimes operating one, and sometimes the other of said cars; that when not in use said cars were kept in a barn in the city of LaFayette, and on some days only one of said cars was in use, and on other days both were in service, each making hourly round trips; that on days when both of said cars were to be used it was the practice that the first car should leave the public square in said city at 6 o'clock a. m. and return at 7 o'clock a. m., and have a clear track, and the second car should not be put on until 7:30 o'clock a. m., and thereafter while both cars were in operation they would pass at a certain siding some distance south of the midway point on said line, and the southbound car should have the right of way; that no telegraph or telephone system, or any other means, was provided for communicating between the offices and employes operating said cars when away from terminal points; that on May 23, 1906, Roudebush was, by appellant, required to appear at 6 o'clock a. m., and take out said car No. 24 and to leave the public square at said hour; that he made the run to Battle Ground

in thirty minutes, and, in accordance with the rules, regulations and directions of appellant, was making the return trip so as to arrive at the public square at 7 o'clock a. m., when, through the negligence and wrongful conduct of appellant and its officers and agents in charge of the operation of said road, a collision was brought about between said cars in the following manner: Appellant, through its said officers and agents, and contrary to its usual practice and custom, caused said car No. 251 to leave the public square at 6:38 o'clock a. m. to make the run to Battle Ground; that said car leaving at that time could not arrive at the passing switch before the south-bound car would pass the same, as appellant and its said officers and agents then and there well knew; that a short distance south of said passing switch the main track makes a sharp curve, on the inside of which, adjoining and close to the track, there were, and always had been, thick clumps of bushes, vines, briers, trees and undergrowth, so as to shut off the view across said curve, as appellant and its said officers and agents well knew; that on said date these bushes, vines and trees were in full leaf, and on that account it was impossible for Roudebush, in the vestibule of his car coming southward around said curve, to see a car approaching from the opposite direction in time to avoid a collision; that appellant and its said officers and agents knowing said facts, and that Roudebush had the right of way, and that running at the usual speed said cars would naturally meet at or about said curve and cause a collision, permitted said car No. 251 to leave the public square, and gave no order or direction to the motorman or conductor on car No. 251 to take another switch immediately south of said curve; that while said Roudebush was at his post of duty, and while rounding said curve at the usual speed and without previous knowledge or warning, he discovered said car No. 251 approaching from the south; that he reversed the power and applied the brakes instantly, but was unable to avoid a collision; that said cars collided with great force, and thereby inflicted

wounds and injuries upon said Roudebush from which he died on the same day; that his death was caused by the wrongful acts and omissions of appellant as aforesaid, and by and through the carelessness and negligence of its said officers and agents, and not otherwise.

The demurrer concedes the truth of all facts properly pleaded, and conceding the truth of the allegations of this complaint a cause of action is stated. It is made to

1. appear that when two cars were in operation over the track described, the first one sent out ordinarily made one round trip before the other was started; that the second car left the public square in the city at 7:30 o'clock, at which time the first car left the other end of the line at Bat-

2. tle Ground, and the passing point was switch No. 54, the south-bound car having the right of way; that a second car was started on the morning of the accident at 6:38 o'clock, contrary to the usual custom, and without the knowledge of those in charge of the car at the other end of the line, and without any means of advising them of the fact; that this car was started by appellant eight minutes after the time the south-bound car should have left the north terminus, consequently sufficient time to reach the usual passing point was not allowed; that no orders or directions were given for it to take an intermediate siding, with knowledge on the part of appellant's officers in charge that the cars would, in the usual course of events, meet at a dangerous curve in the road. The complaint states a cause of action. *Louisville, etc., R. Co. v. Heck* (1898), 151 Ind. 292; *Slater* v. *Jewett* (1881), 85 N. Y. 61, 39 Am. Rep. 627; 3 Elliott, Railroads (2d ed.), §1281.

It is not deemed necessary nor expedient to set forth at length the interrogatories and answers upon which appellant contends that judgment in its favor should have been

3. rendered. These answers in no material respect conflict with the general verdict. It appears from these answers that car No. 251 left the public square at 6:37

o'clock a. m., and, running at the usual rate of speed, would have reached the point where the collision occurred at 6:49 o'clock a. m., and that the collision actually occurred at 6:44 o'clock a. m., or five minutes before the north-bound car should have been expected to arrive at the curve described. Appellant's counsel base their insistence, that the verdict should be overthrown, upon this discrepancy in time. It is found that under the usual custom car No. 251 would not have been started until 7:30 o'clock a. m., and by the special bulletin issued it should have left the public square at 6:30 o'clock, but in fact, started seven minutes late, with the knowledge of appellant, and without the knowledge of the deceased, and without any means of notifying him of any directions as to a meeting point. The decedent, with his car, was entitled to a clear track, and car No. 251 was run upon the main track against his time. Appellant was thus shown to be guilty of negligence as charged, in creating and permitting such conditions, and in failing to give orders or directions for car No. 251 to take the siding south of the curve. Appellant was bound to anticipate that a collision was likely to occur under the facts and conditions found to exist, and it is not necessary to its liability that it should have anticipated that the accident would happen precisely as it did. If the driver of car No. 251 was guilty of negligence in running the car at unusual speed, and thereby going beyond a suitable passing switch, it still remains apparent that appellant was negligent in not directing that car to take the siding south of the curve, and thus clear the track for the car operated by the deceased. The concurring negligence of a fellow servant, if any were found, would not relieve appellant from liability on account of its negligence, and the variance in time between the allegations of the complaint and the findings of the jury are not sufficient to overthrow the general verdict.

Roudebush was fatally injured in the collision, and died within four hours thereafter. About one minute after the

accident, and while he was lying in the wreckage of his car with both his legs severed from his body, and suffering from internal injuries, Edward Booth said to him: "How did this terrible thing occur?" and he answered: "I should have had a clear track until 7:30 o'clock." The admission of this statement over appellant's objection is urged as reversible error. This contention cannot be sustained. The injured motorman, as before stated, was found amidst the wreckage of the demolished car, which he had been operating, suffering from mortal injuries. His statement was made in response to an exclamatory inquiry directly, and almost inseparably, connected with a description of the situation. The physical facts attending the situation in which he was found were clearly competent evidence as to the cause of the accident and manner of its occurrence. His declaration explanatory of the collision was manifestly the natural emanation of the casualty, and the spontaneous and unstudied utterance of one having knowledge of the facts and called upon to account for the accident, and, made as they were in the presence of the circumstances, should possess a high degree of reliability. The principle is well settled in this State, and very generally approved elsewhere, that declarations of an injured party, which are the natural outgrowth of, and tend to illustrate or explain the occurrence giving rise to litigation, made so nearly contemporaneous therewith as to be in the presence of the transaction, and under such circumstances as necessarily to prevent deliberation and preclude any imputation of design, though not precisely concurrent in point of time, are admissible as part of the *res gestae*. *Louisville, etc., R. Co.* v. *Buck* (1889), 116 Ind. 566, 9 Am. St. 883, 2 L. R. A. 520; *Green* v. *State* (1900), 154 Ind. 655; *Pennsylvania R. Co.* v. *Lyons* (1889), 129 Pa. St. 113, 18 Atl. 759, 15 Am. St. 701; *Murray* v. *Boston, etc., Railroad* (1903), 72 N. H. 32, 54 Atl. 289, 61 L. R. A. 495, 101 Am. St. 660; *Dixon* v. *Northern Pac. R. Co.* (1905), 37 Wash. 310, 79 Pac. 943, 68 L. R. A. 895, 107 Am. St. 810;

*Starr* v. *Aetna Life Ins. Co.* (1905), 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.) 636; *Leach* v. *Oregon, etc., R. Co.* (1905), 29 Utah 285, 81 Pac. 90, 110 Am. St. 708; *Kansas City, etc., R. Co.* v. *Morris* (1906), 80 Ark. 528, 98 S. W. 363, 10 Am. and Eng. Ann. Cas. 618; *Christopherson* v. *Chicago, etc., R. Co.* (1907), 135 Iowa 409, 109 N. W. 1077, 124 Am. St. 284; *Zoesch* v. *Flambeau Paper Co.* (1908), 134 Wis. 270, 114 N. W. 485; *McLeod* v. *Ginther's Admr.* (1882), 80 Ky. 399; *Illinois Cent. R. Co.* v. *Houchins* (1907), 125 Ky. 483, 101 S. W. 924; *Galveston, etc., R. Co.* v. *Mitchell* (1908), (Tex. Civ. App.), 107 S. W. 374; *Missouri, etc., R. Co.* v. *Williams* (1908), (Tex. Civ. App.), 109 S. W. 1126.

The court of its own motion gave the following instruction: "The employe in accepting employment assumes as part of such employment the usual and ordinary hazards incident to the discharge of the duties of his employment, and also all such hazards as are open and obvious to one who is in the exercise or discharge of such duties, or which could have been known to him by observation or by the exercise of reasonable care and diligence, or which were in fact known to him from any source whatever. But an employe does not assume in his employment hazards, if any, which are the result of the negligence of the master."

It is contended that a servant assumes all known hazards, whether they arise from the negligence of the master or of others, and that the last sentence in the instruction quoted is manifestly erroneous. As a general rule, the servant is held to the assumption of all risks of the employment known to him, including those springing from the master's negligence, unless such negligence consists in the violation of some statutory duty imposed for the safety of the employe. The jury expressly found that until the deceased met car No. 251 upon the curve he had no knowledge that it was upon the track, or was to start until 7:30 o'clock

a. m., and that appellant, without the knowledge of Roude-
bush changed the bulletin, and started the car at 6 :37 o'clock,
without any orders to take siding No. 53, which was south
of the point of collision.   It is clear, therefore, that although
the criticised part of this instruction was technically incor-
rect, it did not mislead the jury or affect the verdict, since the
jury found that the deceased had no knowledge of the negli-
gence of appellant which caused the accident.   The error in
this instruction was accordingly harmless.   *Pittsburgh, etc.,
R. Co.* v. *Higgs* (1906), 165 Ind. 694, 4 L. R. A. (N. S.)
1081; *Baum* v. *Palmer* (1905), 165 Ind. 513; *Cleveland,
etc., R. Co.* v. *Miller* (1905), 165 Ind. 381; *New Castle Bridge
Co.* v. *Doty* (1907), 168 Ind. 259; *Hammond, etc., Electric
R. Co.* v. *Antonia* (1908), 41 Ind. App. 335.

Appellant requested the court to charge, that if the jury
found that the negligence of the motorman on car No. 251,
Grant Irons, was the cause of the injury and death of
8.   the decedent no recovery could be had.   The court
was seemingly justified in refusing such instruction,
on the ground that it was not applicable to the evidence.
Appellant appears to have tried the case upon the theory that
car No. 251 was rightfully upon the track, and that the
proper passing point was at siding No. 54, which was north
of the curve where the collision occurred.   It is suggested
that Irons was negligent in delaying the departure of his car,
and in attempting to pass this curve on the schedule time of
decedent's car.   It is found to be true that this car left at the
time stated, with knowledge of appellant, and without orders
to pass car No. 24 at the siding south of the curve.   Appel-
lant is thus found to have been guilty of negligence, as
charged, and, that being true, the tendered instruction was
not proper.   If the proffered instruction had been so drawn
as to advise the jury that if it found that the accident was
caused solely by the negligence of Grant Irons, a fellow serv-
ant, no recovery could be had against appellant, it would

have been in terms correct. But if appellant's negligence concurred with that of another in producing the injury and death for which the action was brought, it would be liable, although the negligence of a fellow servant also contributed to the result. *Boyce* v. *Fitzpatrick* (1881), 80 Ind. 526; *Louisville, etc., R. Co.* v. *Heck* (1898), 151 Ind. 292; *Haskell & Barker Car Co.* v. *Przezdziankowski* (1908), 170 Ind. 1, 14 L. R. A. (N. S.) 972. This instruction was rightly refused.

No error is made to appear in overruling appellant's motion for a new trial.

The judgment is affirmed.


## On Petition for Rehearing.

MONTGOMERY, C. J.—Counsel for appellant on petition for rehearing reassert the insufficiency of the complaint, and reargue other questions originally presented, considered and decided by the court. The complaint is not to be commended as a model pleading, but if all its allegations were true appellant would not only be guilty of gross negligence, but almost of a wilful disregard for the lives of its employes. It is earnestly insisted that appellant had a right to run an extra car over its road, without regard to its usual custom, or the knowledge of employes on other cars, or the means of advising them, or the condition of the track, provided it used ordinary care in the premises. This contention may be conceded, but in this complaint it is made to appear, *prima facie,* that ordinary care for the safety of its operative men was not exercised. It is averred that appellant's officers and agents in charge of its road started a second car from LaFayette northward over a single track railway, knowing that the decedent's car coming south had the right of way, and, in the natural course of events, would meet the north-bound car upon a dangerous curve, and cause a collision, but gave no order or direction to the motorman or

conductor of the north-bound car to take the siding immediately south of the curve. Counsel argue that the charge that appellant did not take the particular precaution mentioned is not sufficient to show the absence of ordinary care and to establish negligence. The principle relied on is true as a general rule, but here it appears that the second car was sent out under conditions that would make a collision upon a dangerous curve almost inevitable.

It is inconceivable that proper management would permit the meeting of cars on a single track at such a point, and would not provide for their passing at a convenient siding. The south-bound car had the right of way, was not required to take a siding, and could not be expected to back up in case of a meeting between passing points. In the circumstances stated, it appears to us that the natural, ordinary and only reasonable provision to have been made for the passing of the cars was to direct the north-bound car to take the appropriate siding, which is alleged to have been immediately south of the curve, and that sending a man ahead on foot to give warning, as suggested, or any other arrangement which would permit the cars to meet where they could not pass, would have been absurd. It is alleged that no order to take the siding was given, and that the collision occurred as appellant's officers knew in advance that it naturally would occur. Taking all the allegations of the complaint together, we think it clearly appears and is properly alleged that the deceased was without knowledge of the peril to which he was exposed and did not assume the risk, and that the complaint is sufficient in all respects.

The petition for rehearing is overruled.