JOHN WAHLQUIST, Appellant v. MAPLE GROVE COAL & MINING COMPANY.

Master and Servant: DUTY TO FURNISH SAFE WORK PLACE: *Assuming risk of employment* The doctrine that an employer must furnish his employe with a safe place for work does not apply to a case where the employe is called on with knowledge to do work inherently hazardous, such as repairing defects.

ASSUMING RISK OF EMPLOYMENT: *Work directed by foreman.* A mining employe, who, at his foreman's direction, engages in picking a hole in the side of an entry, near the roof, into which a cross timber is to be inserted for the support of the roof during his work, is entitled to recover, the risk not being one assumed by him, where the foreman knows that the roof is cracked, and fails to support it by temporary props, as should be done, and where the employe himself does not know and is not advised of the roof's condition.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

THURSDAY, FEBRUARY 13, 1902.

ACTION to recover for personal injuries received by plaintiff, while working as an employe in defendant's mine. At the close of the evidence for plaintiff, the court, on motion, directed a verdict for defendant. From the judgment on such verdict, plaintiff appeals.—*Reversed.*

*Brennan & Brennan* for appellant.

*Phillips, Ryan & Ryan* for appellant.

McCLAIN, J.—At the time of the injury plaintiff was engaged as laborer in assisting to prepare an entry in defendant's coal mine for the purpose of laying a track therein. One Lindblom was the pit boss in charge of the work and at his direction plaintiff stood upon a car, and engaged in picking a hole in the side of the entry near the roof, into which a cross timber was to be inserted for the

support of the roof.    While so employed a portion of the roof fell, causing the injuries of which plaintiff complains. There was evidence tending to show that Lindblom had been told the roof was cracking, and thereupon proceeded to have the men put in timbers to support it; that in such case the proper course would have been to use temporary props along the middle of the entry to hold up the roof, before attempting to cut holes for the cross-timbers; that Lindblom directed plaintiff to go to work at this place, which was thus dangerous, without advising him of the condition of the roof, but, on the contrary, with the assurance that there was no danger; and that plaintiff had no knowledge of the condition of the roof.    The fault of Lindblom, if any, for which defendant is to be held liable, was not in putting plaintiff at work in a dangerous place.    The business of mining is in itself hazardous, and the propping of a roof which has commenced to crack, and thus given signs that it may soon fall if not supported, is no doubt peculiarly so; but if it is work which is proper and necessary in the prosecution of the business of mining, in which an employe is voluntarily engaged, he cannot complain if he is injured by such danger.    The doctrine that the employer must furnish the employe a· safe place to work does not apply to a case where an employe is called upon with knowledge to do work which is·inherently hazardous, such as repairing defects, or the like.    The employe cannot recover for injuries received by reason of the very defect which he is employed to repair.    *Petaja v. Mining Co.,* 106 Mich. 463 (64 N. W. Rep. 335, 66 N. W. Rep. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505); *Broderick v. Railway Co.,* 74 Minn. 163 (77 N. W. Rep. 28); *Saxton v. Telephone Exchange Co.,* 81 Minn. 314 (84 N. W. Rep. 109). The fault here, if any, was in not temporarily propping this dangerous roof until the permanent cross-timbers had been put in place.    It is said, however, for de-

fondant, that plaintiff knew that this precaution had not been taken, and therefore assumed the risk. This would no doubt be true if he had had the same knowledge of the condition of the roof which was possessed by Lindblom. *Money, v. Coal Co.,* 55 Iowa, 671. The order of a superior will not excuse an employe in assuming an unnecessary danger which is apparent to him. *Gorman v. Manufacturing Co.,* 99 Iowa, 257; *Showalter v. Fairbanks, Morse & Co.,* 88 Wis. 376 (60 N. W. Rep. 257). But plaintiff was not informed that the roof was cracking, and it was this fact which called for temporary props. We cannot think that it was the duty of plaintiff, on being called to the assistance of Lindblom ·in cutting the hole in the side of the entry, to stop and test the roof of the entry to ascertain whether it sounded hollow, and was likely to fall. Even if he might have thus acquired the information which Lindblom already had, he was not bound to stop to thus make this investigation. Had there been nothing to advise Lindblom of the condition of the roof and give him knowledge thereof superior to that possesed by the plaintiff, then perhaps there would have been no fault attributable to defendant, but Lindblom in cutting the hole in the side of the entry, to rect plaintiff, knew of this danger, and did not advise plaintiff thereof. The case is different also from that of an accident to a miner while working in excavating coal from a room of which he has charge, and where he works on his own responsibility. In such case the duty to ascertain the condition of the roof and prop it to protect himself against danger rests upon him. *Taylor v. Coal Co.,* 110 Iowa, 40. For that purpose the mine operator is required to have props ready for his use and subject to call; but in this case the plaintiff, although an experienced miner, was, for the time being, a laborer under Lindblom's direction, and the duty of temporarily propping the roof rested upon Lindblom, and not upon plaintiff. *Carson v. Coal Co.,* 101 Iowa, 224.

We have, of course, discussed the case on the theory that all the facts were established which plaintiff's evidence tended to prove, and our assumption as to such facts is only for the purpose of determining whether the lower court was justified in directing a verdict for defendant. The view which we have taken of the facts which plaintiff's evidence thus tended to prove leads to the conclusion that the lower court should not have directed a verdict, and its judgment is therefore REVERSED.