INDIANA & CHICAGO COAL COMPANY v. BATEY.

[No. 4,834. Filed May 24, 1904. Rehearing denied October 4, 1904. Transfer denied November 3, 1904.]

1. MASTER AND SERVANT.—*Coal Mines.—Dangerous Place.—Making Safe.—Assumption of Risk.*—Where, in an action by an administrator for the death of his decedent on account of injuries received in a coal mine, it is alleged that such decedent was ordered by the mining boss to go to a certain place in such mine to explore, ascertain and locate a dangerous place in such mine and make the same safe; that pursuant to such order said decedent did so explore; that he did not know that such place was extremely hazardous; that while carrying out such order, and without any fault on his part, slate fell on him, causing injuries from which he died; and that the defendant did not know of such danger, such complaint is not sufficient on demurrer, since it affirmatively appears that such decedent knew of the danger and that it was his duty under the employment to make such place safe, the ordinary risks incurred in such undertaking being assumed, and since the defendant was properly carrying out a duty imposed by the law. (§7472 Burns 1901, Acts 1897, p. 168.)   p. 19.

2. SAME.—*Master's Duty.—Safe Place to Work.*—The rule of "safe place" does not apply where an employe is engaged in making a dangerous place safe. p. 21.

3. SAME.—*Means of Making Dangerous Place Safe.*—By statute (§7472 Burns 1901, Acts 1897, p. 168) it is the duty of the mining boss of a coal mine to make all dangerous places safe, and he is not required to do this personally, but may employ servants to do such work, and the ordinary risks of such work are assumed by such servants. p. 21.

From Greene Circuit Court; *O. B. Harris*, Judge.

Action by Ella Batey against the Indiana & Chicago Coal Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*J. S. Bays, L. F. Bays* and *E. E. Stevenson*, for appellant.

*P. B. May, J. T. Hays* and *W. H. Hays,* for appellee.

COMSTOCK, J.—Appellee, widow of John Batey, deceased, brought this action against appellant, a corporation, engaged in mining and shipping coal, for negligently causing the death of appellee's husband.

The complaint is in one paragraph, and, omitting formal allegations, is in substance as follows: That on July 1, 1902, the plaintiff's husband, John Batey, was in the employ of defendant, and working for defendant in said coal mine, assisting the defendant in and about the operation of said coal mine in the particular duty of taking care of the drivers; that prior to the 7th day of July, 1902, while operating the said mine, said defendant did negligently permit said mine to become in an extremely dangerous and unsafe condition, in this, to wit: the defendant did negligently permit the roof on the north side of said coal mine, at the thirteenth west entrance, to become unsafe and extremely hazardous and dangerous, all of which the defendant well knew, but of which the said John Batey had no knowledge; that defendant was duly notified of the extremely dangerous and hazardous condition of the said roof in said mine on July 5, 1902; that on said 7th day of July, 1902, and for more than ten days prior thereto, the defendant had in its employ, in charge of said mine, one Reese Griffeth, who was on said day, and during all of said time, defendant's duly employed, authorized and licensed mine boss; that on July 5, 1902, said mine boss was duly notified of said extremely dangerous, unsafe and hazardous condition of said roof in said coal mine, but notwithstanding the notice of said mine boss, both the said mine boss and the defendant wilfully failed and neglected either to visit or inspect said dangerous place, which then was one of the working places in said mine; and both said mine boss and the defendant, wilfully failed to visit said dangerous place either on July 4, 5, 6 or 7, 1902, and the defendant and said mine boss wilfully failed during the said time, notwithstanding the said notice, to examine the said dangerous place, or timber the same, or in any manner make the same safe; that on receipt of said notice, and when he was notified of said dangerous condition and place aforesaid, said

mine boss and defendant each did wilfully fail to examine or inspect said roof and dangerous place aforesaid, or in any manner to make the same safe, or attempt so to do, of which said John Batey had no knowledge whatever; and said mine boss and defendant did wilfully fail, on receipt of said notice, or at any other time, to order or direct the said dangerous and unsafe place to be placed, or cause the same to be placed, in a safe condition, and wilfully and negligently failed to give said hazardous and extremely dangerous place any attention whatever, until the time of the injury hereinafter alleged; that on said July 7 the said John Batey, who was then in the employ of the defendant taking care of the drivers, and subject then and there to the order and direction of said mine boss, was ordered by said mine boss to locate said dangerous roof and prepare to make such place safe; that said John Batey did not know of the extremely hazardous and dangerous condition of said place, and by the exercise of ordinary care and diligence could not have known the same, but assumed, as he had a right to do, that it had been visited and examined by the mine boss, and was not extremely hazardous or dangerous, but that it was still safe for the purpose of exploring the same to ascertain and locate the danger; that on said date, and while, in pursuance of said order, said John Batey was acting in the line of his duty in carrying out said order of the defendant's mine boss, and while, in the exercise of due care, he was sounding the roof with a pick, in the discharge of said order, without any fault on his part, or knowledge of the danger, a large piece of slate fell on him, crushing his body and so badly injuring him, the said John Batey, that he died from said injuries about two hours later; that said slate fell on said John Batey at about 7:45 o'clock a. m. on July 7, 1902; that the defendant was wholly at fault for said injuries and death of said John Batey, and said injuries and death were the direct result of the defendant's wilful wrong and negligence aforesaid.

Then follow the allegations in reference to the age of Batey, his earning capacity, and the names of those he left surviving him, who were dependent on him for support, and a general demand for damages in the sum of $10,000.

The cause was put at issue by general denial, and a trial resulted in a verdict and judgment in favor of appellee for $5,000. Answers to eighty-one interrogatories were returned by the jury with the verdict.

The errors assigned question the action of the court in holding the complaint sufficient, in overruling appellant's motion for a new trial, and its motion for judgment on the answers to interrogatories.

1. Upon various grounds the sufficiency of the complaint is challenged; the first being that while lack of knowledge on the part of the deceased is alleged, the reason why he did not have that knowledge was that he assumed that the mine boss had visited the mine, as it was his duty to do, and that it was safe to explore the same for the purpose of locating the danger. It is argued that such assumption did not justify him in thinking that it was safe for such purpose, and does not negative the fact of knowledge. It is claimed to be insufficient, for the further reason, that it does not show that the deceased did not have full knowledge of the dangerous condition of the place where the accident occurred, nor that he was ignorant or did not understand or appreciate the dangers of the business in which he was engaged; also that the complaint shows on its face, notwithstanding the allegations to the contrary, that he had full knowledge of the dangerous condition prior to the time of his injury, and that he had equal chance and equal means with the appellant of ascertaining the exact condition of the place.

The allegations of the complaint present a case in which the deceased was engaged in locating a danger of which he had notice. The order under which he was acting when the accident occurred fully advised him of the conditions.

The averment that he had no knowledge that the place was unsafe, but that appellant had, is unavailing in the face of the allegation that he was ordered by the mine boss to make it secure. The fact that the insecure place was not inspected and made secure for some days before the accident is not material, because the injury did not occur until after the deceased had been informed of the unsafe condition of the premises. Section 7472 Burns 1901, §5480m Horner 1901, Acts 1897, p. 168, §12—the statute upon which the action is founded—provides that "Whenever such mining boss shall have an unsafe place reported to him, he shall order and direct that the same be placed in a safe condition," etc. He was only, therefore, in the discharge of a duty enjoined upon him, in ordering steps to be taken to make the place in question secure. Whether the deceased assumed, or not, that the mining boss had inspected said roof, could not rebut the fact of notice, for the very order under which he acted had reference only to a dangerous roof, and to making it safe. It must be held that, in incurring a known danger, he was assuming a risk incident to his employment. The facts do not present a case in which the rule that an employer is required to provide a safe place to work applies. The employer was engaged in the very work of making or preparing to make a dangerous place safe. *Finalyson* v. *Utica, etc., Co.* (1895), 67 Fed. 507, 14 C. C. A. 492. The deceased was in the line of his duty. He assumed the risk ordinarily incident thereto. It would seem to be a contradiction in terms, where the work to be performed was known by the employe to make a dangerous place safe, to say that the hazards reasonably incident thereto were not assumed. The liability of loose slate in the roof of a coal mine to fall upon slight disturbance is a matter of common observation. It has been held, in substance, in this State that the risks assumed by a servant are only such as arise after the master has discharged his duty. The cases so holding are distinguishable from the case at bar,

where the injury was received not while the deceased was engaged in mining coal, but in forwarding an attempt by the master to discharge the statutory duty of making the mine safe for the workmen.

2. The rule of safe place does not apply where an employe is engaged in making a dangerous place safe. Dangers incident to such employment are assumed. *Wahlquist* v. *Maple Grove, etc., Co.* (1902), 116 Iowa 720, 89 N. W. 98; *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659, 666; *Baltimore, etc., R. Co.* v. *Welsh* (1897), 17 Ind. App. 505.

3. The danger existed. It was known to appellant and to the deceased. Upon appellant rested the obligation of removing it. This could only be done by some intelligent agency—not necessarily by the manual efforts of the mining boss. For that purpose he selected the deceased, presumably entirely fit for the work. Inasmuch as the deceased received knowledge of the danger, whether the information of the mining boss was derived from his personal observation, or from any other source, was not material. It is manifest too that a personal visit by the mining boss would have given the deceased no better opportunity of ascertaining the condition of the roof in question than that afforded him. The complaint is insufficient. It is not necessary to consider the other questions presented by the appeal.

Judgment reversed, with instructions to sustain the demurrer to the complaint.