GRIFFIN v. NEW YORK TELEPHONE CO.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—NEGLIGENCE—RULES.

A telephone company having provided ample rules for the protection of the employés in climbing poles, actionable negligence was not shown where plaintiff failed to inspect a pole using the appliances given him, and it fell injuring him, although there was no inspection of the pole by the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

Appeal from Trial Term, Rockland County.

Action by Michael J. Griffin against the New York Telephone Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, THOMAS, RICH, and CARR, JJ.

Arnold W. Sherman, for appellant.

John F. McFarlane, for respondent.

WOODWARD, J. The plaintiff was employed by defendant as a "trouble man," or line repairer. Whenever a line was found to be out of order or broken down by the operating department, the repair department was called into action, and the plaintiff was one of the men thus employed. On the 13th of September, 1909, one of defendant's wires extending into the quarry of the Foss & Conklin Trap Rock Company at Rockland Lake fell down, and the plaintiff was sent to repair the same. No special directions were given. He was simply told that this particular circuit was out of order, and to make the necessary repairs. He says that, when he arrived at the point where the wire was down, he spliced the ends, and then walked around the pole looking for cracks; that he took the end of his pliers and opened up a hole in the pole deep enough to enable him to drive a jackknife into it, and that he found nothing wrong with the pole; that he took the wire and climbed up about five feet, and then gave the pole a shake to further test it, and then climbed to the top; that while at the top he used some exertion to throw the wire loose from the shingles of a nearby building, and that the pole broke and fell, throwing him into a stream of water near at hand, producing more or less serious injuries.

It is not disputed that the pole which plaintiff inspected fell because of a rotten condition about four to six inches below the surface of the ground, and it is the contention of the plaintiff that the defendant was negligent in not having inspected this pole prior to the ascent of the plaintiff. The defendant concedes the general rule that it owed the duty of reasonable inspection, but it claims to have afforded this, in that it had promulgated rules, which were concededly brought to the attention of the plaintiff, both by reason of his service of something

like fourteen years, and his admission that he knew of the existence of the rules, by which such inspection was provided, and that he was familiar with these rules. These rules, after calling attention to the desirability of the workman taking out all of the tools and appliances which he will need during the day, provide that "each employé shall keep his tools, testing instruments, etc., in first-class condition," and that:

"Constant and extraordinary care shall be exercised in all situations when an element of danger is or may be present, as when working in the vicinity of high potential conductors, working on poles or cross-arms which may have been weakened by storms or other causes, when working in trenches, manholes, elevator shafts, near machinery, on ladders, trees, etc. Linemen, splicers and others, whose duties require them to climb poles, trees, or work upon scaffolds and other structures or in boatswain's chairs, must carefully inspect the same and satisfy themselves that the same are sound and in safe condition to work upon. Should inspection indicate that a pole is dangerous, the work shall be deferred until the pole can be replaced or made safe. If, however, it is necessary to immediately complete the work in hand, the pole shall be made safe temporarily by placing guys. In such cases, immediate report shall be made to the foreman, who shall arrange, without delay, for the necessary work to establish permanently safe conditions. * * * Employés are warned that poles which are safe when the strain of the wires or cables in each direction is balanced, may be unsafe in case all or some of the wires or cables are removed on one side, unless the unbalanced strain thus caused is equalized by a guy or brace. * * * Before starting work, employés shall carefully examine such tools, appliances and supplies as are furnished by the company and make requisition for such others as are necessary for the work and see that the same are supplied."

The evidence clearly discloses that the defendant had provided all of the tools and appliances necessary to test the pole which it became the duty of plaintiff to climb in the performance of his work. He was called upon by the rules which governed his employment, and which were familiar to him, to "carefully inspect the same," and satisfy himself that the same was in a sound and safe condition to work upon, and, "should inspection indicate that a pole is dangerous, the work shall be deferred until the pole can be replaced or made safe." His duty was not limited by the cursory inspection which might operate to relieve him from contributory negligence, under circumstances where he had a right to rely upon inspection by the master in the regular course of business, but was extended to that careful inspection which should disclose any defects in the pole which it would have been the master's duty to discover by such an inspection. · He was not asked to do two things at once. He was not asked to perform the work of repairing the line under other than safe conditions, so far as the work could be made safe by inspection. His positive orders were that he "must carefully inspect the same," and satisfy himself that the same were sound and safe, and, if the careful inspection indicated danger, then he was to defer the work until the pole was made safe. Where, then, is the negligence of the master? What duty has the master neglected, that he owed to the plaintiff? The plaintiff certainly cannot say that because he failed to make a careful inspection, such as the master directed him to do, furnishing the time, the tools and the appliances, the master has failed to discharge his duty to him; that would be to violate that fundamental maxim of the common law that a man

may not take advantage of his own wrong, and yet this is the effect of the verdict which has been rendered in this case. The plaintiff was employed to make a careful inspection. It is his theory that a careful inspection by the master would or should have disclosed the defective condition of this pole four to six inches below the surface of the ground, yet, having failed to make such an inspection as he contends the master should have made, he now seeks to charge the master with the responsibility for his own faulty inspection, and, unless we are prepared to say that it is the duty of a corporation to send out a competent inspector to forerun an equally competent inspector who is to do an incidental job of splicing and replacing a wire upon a telephone pole, the judgment must be reversed, for it is based upon fundamentally wrong principles.

The judgment and order appealed from should be reversed, with costs. All concur.