## Terre Haute, Indianapolis and Eastern Traction Company *v.* Young, Administratrix.

[No. 8,206. Filed April 3, 1914.]

1. **Master and Servant.**—*Injuries to Servant.—Complaint,—Negativing Assumption of Risk.*—A complaint for the death of a bridge painter, caused by contact with, or near approach to trolley or feed wires strung on an electric railway bridge, in order to show a nonassumption of the risk, should contain averments to the effect that decedent had no knowledge of the defects or dangers complained of. p. 30.

2. **Master and Servant.**—*Injuries to Servant.—Complaint.—Servant's Knowledge of Danger.*—While either actual or constructive knowledge by a bridge painter, who was electrocuted while painting an electric railway bridge, of the defect or danger which produced his death, would defeat the right to recover, as a matter of pleading a general averment of the want of knowledge of such defect or danger is sufficient to repel not only actual but also implied or constructive knowledge. p. 31.

3. **Master and Servant.** — *Injuries to Servant. — Complaint. — Knowledge of Danger.*—To the extent that allegations of the master's knowledge and of the servant's want of knowledge are essential to the sufficiency of a complaint for the death of a servant, the latter must be as broad and comprehensive as the former. p. 31.

4. **Master and Servant.** — *Injuries to Servant. — Complaint. — Knowledge of Danger.*—In an action for the death of a bridge painter by contact with the trolley wire suspended on an electric railroad bridge, the averment of the complaint that decedent did not know of the dangerous position of the wires was insufficient where the specific facts pleaded showed that the wire was in plain view and uncovered, and that decedent's opportunity for knowledge was practically equal to that of defendant. p. 31.

5. **Master and Servant.** — *Injuries to Servant. — Complaint. — Knowledge of Danger.*—The allegation, in a complaint for the death of a bridge painter by contact with trolley wires suspended on an electric railway bridge, that decedent did not know of the dangerous condition of the wires, was sufficient to include the fact of want of knowledge that the wires were uninsulated and heavily charged with electricity, and that a person coming in contact with or in proximity to them would receive a charge of electricity sufficient to kill him, and is sufficient to show that decedent did not assume the risk. p. 32.

6.  APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*—
Overruling a demurrer to one paragraph of complaint, even if
erroneous, was harmless where the jury's answers to interroga-
tories disclosed that the verdict was based upon a paragraph that
was sufficient.  p. 32.

7.  MASTER AND SERVANT.—*Injuries to Servant.*—*Knowledge of
Danger.*—*Answers to Interrogatories.*—In an action for the
death of a bridge painter by an electric shock from the trolley
wires on an electric railway bridge, answers by the jury to in-
terrogatories showing that decedent was not killed by contact
with a wire, but by bringing his body in proximity thereto
whereby an arc was formed, that the location of the wires and
the fact that they were uninsulated, were open and obvious, and
that decedent knew the danger of contact with such wires, are
not in conflict with a verdict for plaintiff, since they do not
show that decedent knew the danger of receiving a charge by
coming near to such wires without touching them.  p. 32.

8.  MASTER AND SERVANT.—*Injuries to Servant.*—*Instructions.*—
*Contributory Negligence.*—*Burden of Proof.*—In an action for
the death of a servant, instructions that contributory negligence
is a defense and that the burden is on defendant to establish it
by a fair preponderance of the evidence were not erroneous,
though it is better practice to inform the jury specifically to the
effect that contributory negligence is proved by a preponderance
of all the evidence.  p. 33.

9.  MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of
Risk.*—*Master's Negligence.*—Where the doctrine of assumed risk
applies, the servant is not only held to assume all the ordinary
and usual risk of the service incident to the enterprise, properly
conducted, but is also chargeable with assumption of the risk
arising from the master's negligence, where he has knowledge of
the existence of the risk and fully understands and appreciates
the peril incident thereto, unless his continuance in the service
is induced by the master's promise to remove the peril.  p. 34.

10.  MASTER AND SERVANT.—*Injuries to Servant.*—*Instructions.*—
*Assumption of Risk.*—In an action for the death of an employe
killed by an electric current while painting a bridge, where the
jury's answers to interrogatories showed that decedent under-
stood certain perils of the service and there was evidence that
he knew of certain other perils, and it did not affirmatively ap-
pear that he did not fully understand the particular peril which
caused his death, an instruction that the servant does not assume
the risk of his master's negligence was reversible error.  p. 34.

11.  MASTER AND SERVANT.—*Injuries to Servant.*—*Instructions.*—
*Hypothetical Statement.*—Where there was a controversy as to
whether plaintiff's decedent was killed by an electric shock while

painting an electric railway bridge, or by a fall therefrom not induced by any shock, an instruction directing a verdict if certain hypothetical facts were found, but not informing the jury that the negligence charged must have been the proximate cause of the death, was erroneous.  p. 36.

12.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Instructions.*—In an action for the death of a servant, an instruction basing decedent's assumption or nonassumption of risk on his comparative duty to discover and know the conditions of danger surrounding him, and excluding from consideration what he may have actually known, was erroneous.  p. 37.

13.  TRIAL.—*Instructions.—Hypothetical Statements.*—An instruction directing a verdict if certain facts submitted hypothetically are found to be true, must embrace all the facts, conditions and elements essential to the verdict conditionally directed, and an omission in this respect is not properly supplied by another instruction.  p. 37.

From Tippecanoe Circuit Court; *Richard P. DeHart,* Judge.

Action by Rose Ella Young, as administratrix of the estate of Nathaniel W. Young, deceased, against the Terre Haute, Indianapolis and Eastern Traction Company.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*Parks & Parks* and *W. H. Latta,* for appellant.

*Stuart, Hammond & Sims* and *George W. Galvin,* for appellee.

CALDWELL, J.—On August 8, 1908, Nathaniel W. Young, appellee's decedent, as an employe of appellant, was engaged in painting an iron and steel railroad bridge, owned and used by appellant, as a part of its electric traction line, which bridge spanned Wild Cat Creek at a point about one mile east of the town of Dayton, in Tippecanoe County. On Sunday morning, August 9, the lifeless body of the decedent was found at the north side of the bridge partially submerged in the water of the creek.  In addition to the marks of several minor injuries, there was on the body evidence of a severe electric burn, extending from the top of the left shoulder several inches down the back

to the lower margin of the shoulder blade, and the scalp on each side of the head had been broken and stripped down to near the ears. This action is prosecuted by appellee, as administratrix, to recover damages against appellant on account of said death, for the use and benefit of herself, as widow, and for the use and benefit of several minor children. A trial by jury resulted in a verdict and judgment in favor of appellee in the sum of $6,000.

The complaint is in two paragraphs, each of which was unsuccessfully challenged in the trial court by a demurrer. The rulings on the demurrers are properly presented in this court by assignment of errors. The sole objection to each paragraph is that it is asserted that there is no sufficient averment therein of nonassumption of risk by the decedent.

The facts alleged in the first paragraph in part are substantially as follows: That appellant was maintaining as a part of its equipment a trolley wire suspended over the center of the track, and about six inches below the under side of the top girders of the bridge, and also a high tension or feed wire, about two feet above the girders and near the north side of the bridge; that each of the wires was heavily charged with electricity, but that neither of them was insulated or covered, for the protection of those whose duty it was to work around them; that appellant knew that it was necessary to repair and paint the bridge from time to time, and that to that end it would be necessary for persons to work around and about the wires, but that it carelessly and negligently strung the wires in such a position that it was not possible or practicable for such persons to work upon the bridge without great danger of coming in contact with the uninsulated and highly charged wires; that appellant "carelessly and negligently failed and omitted to protect or cover said wires with insulating material, so as to render them safe to persons lawfully working on said bridge, and carelessly and negligently con-

structed and permitted said wires to remain uinsulated and in dangerous condition.'' That appellant knew that the wires were heavily charged with electricity, and that they were uninsulated and unprotected, and that there was great danger that the decedent, while prosecuting said work, would come in contact with them, and that from any such contact he would be killed or seriously injured, but that notwithstanding such knowledge, it carelessly and negligently failed to insulate or cover the wires or otherwise protect the decedent; that appellant ''knew of the dangerous position and condition of said wires''; that the decedent was a painter by trade, and ''had no knowlege of said dangerous position or condition of said wires''. Facts are alleged to the effect that the decedent, while painting the bridge, as such employe of appellant, came in contact with one of the wires, and was thereby killed by a consequent electric shock.

The second paragraph of complaint repeats most of the averments of the first paragraph, and alleges in addition that appellant negligently suffered the wires to sag and sway subject to the caprice of the elements. It alleges that by reason of the unprotected and uninsulated condition of the wires, there was danger of the electric fluid which they carried escaping therefrom, and into the body of any person who approached near the wires. Facts are fully averred respecting appellant's knowledge of the alleged dangerous position and condition of the wires, and that appellant knew that decedent was painting the bridge, and that it would be necessary for him to approach near the wires and that thereby he would be in danger of coming in contact with the fluid likely to be caused to escape from the wires by his near approach thereto, and that appellant knew all the dangers and perils likely to result from electricity escaping from the wires. On the subject of the decedent's nonassumption of risk, it is alleged in substance that decedent was a painter by trade and that he ''was

wholly unfamiliar with electricity and its mode of carriage and confinement, or the perils therefrom; that said decedent had no knowledge of said dangerous position and condition of said wires, or their uninsulated condition, or of their need of insulation, and knew nothing of the presence of said escaped fluid on such bridge, or of any peril to be apprehended therefrom''. It is alleged that appellant ''well knew each and all of these things, or by the exercise of reasonable care could have known''. It is further alleged that decedent, while painting the bridge, came in contact with electricity that escaped from one of the wires, and that as a result he was killed.

One distinction between the first and second paragraphs of complaint is that the former alleges that decedent came in contact with one of the wires, and thereby received a charge of electricity, while the latter alleges that he merely approached near to the wires and thereby came in contact with electricity escaping from the wire. It is appellee's construction of the second paragraph of complaint that decedent's near approach to one of the wires caused the electricity to arc or leap therefrom through the intervening space to his body, and that thereby decedent received the charge that killed him.

As we have said, appellant does not claim that either of the paragraphs is defective, except as to its allegations on the subject of nonassumption of risk on the part of the decedent. To that end, as applied to this case, in order that either paragraph of complaint may be sufficient as against demurrer, it is necessary that such paragraph contain averments to the effect that decedent had no knowledge of the defect or dangers complained of. *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 89, 97 N. E. 320; *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, 520, 88 N. E. 932; *Cleveland, etc., R. Co.* v. *Parker* (1900), 154 Ind. 153, 56 N. E. 86; *Lake Shore, etc., R. Co.* v. *Stupak* (1886), 108 Ind. 1, 8 N. E. 630.

In this case, decedent's knowledge, whether actual or constructive, of the defect and consequent danger complained of would defeat the right to recover, but as a matter of pleading, it is sufficient to allege that decedent did not know of such defect and danger. Such allegation repels not only actual but also implied or constructive knowledge. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 300, 53 N. E. 235; *Johnson* v. *Gebhauer* (1902), 159 Ind. 271, 285, 64 N. E. 855. To the extent that allegations of the master's knowledge and of the servant's want of knowledge are essential to the sufficiency of the complaint, the latter must be as broad and comprehensive as the former. *Cleveland, etc., R. Co.* v. *Morrey, supra; Peerless Stone Co.* v. *Wray* (1896), 143 Ind. 574, 42 N. E. 927; *Indianapolis Traction, etc., Co.* v. *Mathews, supra.*

Measured by the foregoing principles, while each paragraph of the complaint might be improved, if the facts warrant it, by more specific and definite allegations on the subject of decedent's knowledge of the condition of the wires and the danger and perils likely to be incurred from coming in contact with or in close proximity to them, still in our judgment, each paragraph is sufficient. It would seem that the allegation in each paragraph that decedent did not know of the dangerous position of the wires scarcely adds strength to the complaint. From each paragraph it sufficiently appears that the wires were in plain view and uncovered. As to the position of the wires, decedent's opportunity for knowledge was practically equal to that of appellant. In such case, the specific facts pleaded control the general averment of want of knowledge. *Cleveland, etc., R. Co.* v. *Morrey, supra; Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561, 565, 47 N. E. 214; *Corning Steel Co.* v. *Pohlaplatz* (1902), 29 Ind. App. 250, 254, 64 N. E. 476. The averment that decedent did not know of the dangerous condition

of the wires is more comprehensive. The averment is sufficient to include the fact of a want of knowledge that the wires were uninsulated, and heavily charged with electricity, and that a person coming in contact with them would receive a charge of electricity sufficient to injure him seriously or kill him. We, therefore, hold said paragraph sufficient.

The second paragraph contains additional matter above outlined on the subject of nonassumption of risk, and in our judgment it is plainly sufficient. Moreover, the answers of the jury to the interrogatories, as hereinafter outlined, affirmatively show that the general verdict rests on the second paragraph of complaint rather than the first paragraph. Under such circumstances, the second paragraph being sufficient, even if the first paragraph should be held to be insufficient, the error in overruling a demurrer to it would be harmless. *Taylor* v. *Wootan* (1891), 1 Ind. App. 188, 27 N. E. 502, 50 Am. St. 200.

It is urged that the court erred in overruling appellant's motion for judgment on the answers to interrogatories. Such answers, in so far as material, are to the following effect: That the decedent did not die from drowning in the creek or from falling, but that his death was caused by an electric shock, received from the feed wire; that the location of the wires and the fact that they were not wrapped with insulating material was open and obvious to decedent while he was working on the bridge; that decedent had been warned of the danger of touching the wires; that decedent did not come in contact with one of the wires, and his death was not caused by bringing his body in contact therewith, as charged in the first paragraph of complaint, but that an arc was formed; that decedent knew prior to the time of his death that the wires were charged with electricity, and that it was dangerous to get his body in contact with them; that decedent got a shock from some of the wires on the morning of August 8,

which shock was not fatal, but that later in the day he received a second shock which killed him; that the second shock was the one that caused the burn discovered on decedent's body after his death.   The answers to interrogatories do not exclude the presumption that appellant knew that it was dangerous for decedent to approach near the wires without touching them, and that decedent did not know such fact, and that in the absence of such knowledge decedent, while prosecuting his work, did bring his body near to the feed wire, without touching it, whereupon a charge of electricity leaped from such wire to appellant's body, thus forming an arc, as found by the jury, and that the consequent shock caused decedent's death.   In our judgment, the answers are not inconsistent with or in irreconcilable conflict with the general verdict, and the court, therefore, did not err in overruling the motion.   The general verdict includes a finding that decedent did not know the facts included in the presumption, or appreciate the consequent peril of approaching near the wires without touching them.   The mere fact that decedent had knowledge of conditions as found by the jury, and as above outlined, did not necessarily charge him with knowledge of the peril included in the presumption.   The nature of electricity to leap from a conducting body to another approaching body when the latter is grounded is not rendered open and apparent by the facts found.   *Consolidated Stone Co.* v. *Summit, supra; Lagler* v. *Roch* (1914), 57 Ind. App. —, 104 N. E. 111.

By instructions Nos. 1, 10 and 21, given at the request of appellee, the court charged the jury in substance that

8. contributory negligence is a defense, and that the burden is upon appellant to establish it by a fair preponderance of the evidence.   It is argued that by these instructions the court excluded from consideration on the issues, evidence introduced by appellee.   The instruc-

tions are not open to such construction. While it is a better practice to charge the jury specifically to the effect that it is sufficient if the contributory negligence of the plaintiff is proved by a preponderance of all the evidence, without regard to whether such evidence was given by plaintiff or by defendant, or by both, still the instructions as given were not erroneous. *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Town of Winamac* v. *Stout* (1905), 165 Ind. 365, 75 N. E. 158, 651; *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 79 N. E. 485; *Oklahoma City* v. *Reed* (1906), 33 L. R. A. (N. S.) 1083, 1178, note.

Instruction No. 7 given at the request of appellee is as follows: "I further instruct you that while the doctrine of the assumption of risk is by the law read into every contract between master and servant, the servant does not assume any risk arising out of the negligence of the master, nor does he assume any risk, the perils of which he does not understand and appreciate." It is urged that the statement in this instruction to the effect that the servant does not assume any risk arising out of the negligence of the master, is erroneous. There are cases in which may be found the broad and apparently unqualified assertion that the servant does not assume the risk of dangers or perils arising from the master's negligence. An examination of such cases, however, will for the most part disclose that the court is speaking only of the facts then before it, and that under such facts, the risk was held not to have been assumed, because the servant was excusably ignorant of its existence or was unable, by reason of youth or inexperience, to comprehend or appreciate it. In the ordinary case, it would be almost a contradiction of terms to assert that where the servant has full knowledge of the existence of the risk, and fully understands and appreciates the peril incident thereto, he does not assume it by continuing the employment, even

though such risk arises out of or is created by the master's negligence. It has come to be almost axiomatic that the servant assumes all the ordinary and usual risks of the service incident to the enterprise, properly conducted. In such a case, it would seem that the real basis of nonliability as against a master for an injury received by the servant is the absence of negligence on the part of the master, rather than the assumption of risk by the servant. Under such circumstances, however, if the servant by reason of inexperience or youth is unable to appreciate the peril of the service, it doubtless may correctly be said that the risk is not assumed by him, and that the master may be convicted of negligence for failure to instruct. But perils may arise in a service, or the natural perils thereof may be increased, which are in each instance traceable to the master's negligent failure to perform his duty in the matter of furnishing the servant a reasonably safe place in which to work, or reasonably safe tools and equipments with which to work. If the servant, in such case, with knowledge and comprehension of the facts, voluntarily continues his service, he assumes the risk, unless such continuance is induced by the master's promise to remedy the defect and remove the peril. The foregoing principles were, in part, excluded from the consideration of the jury by the instruction under consideration. The answers of the jury to the interrogatories show that certain perils of the service were understood by decedent, and there was some evidence that he had knowledge of certain other perils, and it does not affirmatively appear that he did not fully understand the particular peril found to have caused his death. Under the facts of this case, we are compelled to hold that the giving of the instruction was harmful error. The same infirmity exists in instruction No. 11 given at appellee's request. The following authorities sustain us: *Indianapolis Traction, etc., Co.* v. *Mathews, supra; Dodge Mfg. Co.* v. *Kronewitter* (1914), 57 Ind. App. —, 104 N. E. 99; *American Rolling*

*Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, 675, 67 N. E. 896, 69 N. E. 460; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141, 148, 38 N. E. 411; *Bradbury* v. *Goodwin* (1886), 108 Ind. 286, 290, 9 N. E. 302; *Pennsylvania Co.* v. *Brush* (1892), 130 Ind. 347, 350, 28 N. E. 615; *Reitman* v. *Stolte* (1889), 120 Ind. 314, 317, 22 N. E. 304; *Jenney Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566, 570, 18 N. E. 30; *Rogers* v. *Leyden* (1891), 127 Ind. 50, 26 N. E. 210; *Louisville, etc., R. Co.* v. *Sandford* (1889), 117 Ind. 265, 267, 19 N. E. 770; *Scheurer* v. *Banner Rubber Co.* (1908), 28 L. R. A. (N. S.) 1207, note; 1 Labatt, Master and Servant §274a.

In *Fort Wayne, etc., Traction Co.* v. *Roudebush* (1909), 173 Ind. 57, 88 N. E. 676, 89 N. E. 369, an instruction given contained the following language: "But an employe does not assume in his employment hazards, if any, which are the result of the negligence of the master." The court there held that the instruction containing such language was erroneous, but that in the particular case, the error in giving it was harmless, for the reason that it affirmatively appeared that plaintiff's decedent had neither actual nor constructive knowledge of the particular negligence of the master, or of the consequent hazard arising therefrom. The case is in harmony with the conclusion which we have reached, the court saying on page 64: "As a general rule, the servant is held to the assumption of all risks of the employment known to him, including those springing from the master's negligence, unless such negligence consist in the violation of some statutory duty imposed for the safety of the employe."

Instruction No. 8 given at appellee's request is justly criticized on the ground that the facts thereby hypothetically submitted for determination, do not include the fact 11. of a causal connection between the negligence charged and the death of appellee's decedent. The instruction directs a verdict in favor of appellee, if the facts submitted are found to be true. Unless the negligence was

found to be the proximate cause of the injury and death, a verdict against appellant was not warranted. There was controversy on the trial respecting whether decedent was killed by an electric shock or by a fall, not induced by such a shock. *Southern Indiana R. Co.* v. *Martin* (1903), 160 Ind. 280, 66 N. E. 886; *Nickey* v. *Steuder* (1905), 164 Ind. 189, 73 N. E. 117. The error in giving the instruction, however, was probably rendered harmless by the answer's to interrogatories as hereinbefore outlined. *Fort Wayne, etc., Traction Co.* v. *Roudebush, supra; Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 76 N. E. 299, 4 L. R. A. (N. S.) 1081.

Instruction No. 13, given at the request of appellee, bases decedent's assumption or nonassumption of risk on his comparative duty to discover and know the conditions of danger surrounding him while engaged in painting the bridge, and excludes from consideration what decedent may have actually known. The instruction is erroneous under authorities cited in our consideration of instruction No. 7.

There are certain other instructions, by which the court directed that verdict be returned for the one party or the other, if certain facts submitted hypothetically were found by the jury to exist. In such a case, it is held that such an instruction must embrace all the facts, conditions and elements essential to the verdict conditionally directed, and that if any such essential fact, condition or element is omitted, it is not sufficient to supply it by another instruction. There is apparently some confusion in the decisions in this State respecting the question under consideration, and without attempting to review such decisions, we suggest it as the better practice to include in such an instruction all the essential facts or elements and conditions, if such instruction is conditionally mandatory in form, and regardless of whether such facts, elements and conditions so hypothetically submitted are specifically stated

by outlining the facts, or generally stated by submitting the conditions and elements. The following decisions will prove instructive. *Chicago, etc., R. Co.* v. *Dinius, supra; Shirley Hill Coal Co.* v. *Moore* (1914), 181 Ind. 513, 103 N. E. 802, 804; *Burford* v. *Dautrich* (1914), 55 Ind. App. 384, 103 N. E. 953; *Newcastle Bridge Co.* v. *Doty, supra; Board, etc.* v. *Clark* (1909), 43 Ind. App. 499, 87 N. E. 1059; *Chicago, etc., R. Co.* v. *Glover* (1900), 154 Ind. 584, 57 N. E. 244; *Indiana Nat. Gas, etc., Co.* v. *Vauble* (1903), 31 Ind. App. 370, 68 N. E. 195; *Lake Shore, etc., R. Co.* v. *Johnson* (1909), 172 Ind. 548, 88 N. E. 849; *Pennsylvania Co.* v. *Ebaugh* (1899), 152 Ind. 531, 53 N. E. 763; *Johnson* v. *Gebhauer, supra; Indianapolis Traction, etc., Co.* v. *Smith* (1906), 38 Ind. App. 160, 77 N. E. 1040; *Taylor* v. *Wootan, supra; Nickey* v. *Steuder* (1905), 164 Ind. 189, 195, 73 N. E. 117; *Indianapolis Traction, etc., Co.* v. *Mathews, supra; Rahke* v. *State* (1907), 168 Ind. 615, 81 N. E. 584; *Voris* v. *Shotts* (1898), 20 Ind. App. 220, 50 N. E. 484; *Jackson School Tp.* v. *Shera* (1893), 8 Ind. App. 330, 35 N. E. 842; *Kentucky, etc., Bridge Co.* v. *Eastman* (1893), 7 Ind App. 514, 34 N. E. 835; *Hutchinson* v. *Wenzel* (1900), 155 Ind. 49, 56 N. E. 845; 38 Cyc. 1684.

For errors indicated in instructions given, the judgment is reversed, with directions to sustain the motion for a new trial.

NOTE.—Reported in 104 W. E. 780. As to care required of servant and his knowledge of danger in respect of his employment, see 98 Am. St. 313. As to servant's assumption of risk of danger of electric shock, see 32 L. R. A. 353. On the general question of the servant's assumption of risk, see 38 L. Ed. U. S. 391. For servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. On the servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76. As to whether a servant may assume the risk of dangers created by the master's negligence, see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215. See, also, under (1, 2) 26 Cyc. 1397; (6) 31 Cyc. 358; (7) 26 Cyc. 1513; (8) 26 Cyc. 1495; (9) 26 Cyc. 1177, 1205; (10) 26 Cyc. 1503; (11) 26 Cyc. 1496; (12) 26 Cyc. 1504.