## FREE *v*. HOME TELEPHONE COMPANY.

[No. 9,304.   Filed June 20, 1917.]

1. NEGLIGENCE.—*Duty of Exercising Reasonable Care.*—A charge of negligence may not be sustained except as based upon a failure to exercise reasonable care.   p. 15.

2. MASTER AND SERVANT.—*Duty of Master.*—*Safe Place to Work.* —It is the duty of the employer to furnish to the employe a safe place within which to work, and to provide him with proper tools and equipment, a duty which includes that of making reasonable inspection and repairs and of bringing to the knowledge of the employe the existence of defects and dangers of which the employer has knowledge, actual or constructive, but which are not known to the employe, and with knowledge of which he is not chargeable, and the master's failure to discharge such duties with reasonable care is negligence.   p. 15.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Negligence.*— *Place of Work.*—*Failure to Inspect.*—Actionable negligence in an employer cannot be predicated on the mere failure to inspect the place of work, when inspection would disclose only what was fully known and appreciated by the servant.   p. 16.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Safe Place to Work.*—*Duty of Master.*—The duty of a master to furnish a reasonably safe place to work and to use ordinary care to keep it safe, is a qualified one, and does not extend to all the

passing risks that may arise from short-lived causes, such as arise in the ever-changing conditions of the safety of the work, or under circumstances imposing on the employe the duty to make the place safe, or where he is engaged in so doing. p. 16.

5. MASTER AND SERVANT.—*Injuries to Servant.—Perils Incident to Service.—Liability of Master.*—Where a competent person is employed to repair defects, or to demolish structures, and the perils of the service and the injury for which recovery is sought were occasioned by the nature of the work being done and which the servant was employed to do, such perils are deemed incident to the service, and there can be no recovery, since the employe assumes the risk. p. 17.

6. MASTER AND SERVANT.—*Injuries to Servant.—Duty to Warn and Instruct Servant.*—A master may be liable to a servant injured while making repairs, demolishing structures, or similar work, under the supervision and direction of a foreman or other person representing the master, or where the master withholds from the servant information respecting defects and hazards with a knowledge of which the servant is not chargeable. p. 19.

7. MASTER AND SERVANT.—*Injuries to Servant.—Master's Liability.*—Where the manager of a telephone company and overseer of its lines engaged in dismantling a telephone line under the company's orders was injured when a pole which he had climbed broke off at the ground because of its rotten condition, the company was not liable, since it was the duty of the servant, who was experienced in the work and in full charge thereof, to test any pole before he ascended it and determine its safety for himself. p. 20.

8. MASTER AND SERVANT. — *Employer's Liability Act. — Negligence.*—Negligence is the gist of all actions that may be maintained under the Employers' Liability Act (§8020a *et seq.* Burns 1914, Acts 1911 p. 145). p. 21.

From Steuben Circuit Court; *Dan M. Link,* Judge.

Action by Clem L. Free against the Home Telephone Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Mountz & Brinkerhoff* and *Brown & Carlin,* for appellant.

*Elmer E. Stevenson* and *John G. Yeagley,* for appellee.

CALDWELL, J.—While appellant, as appellee's em-

ploye, was engaged in dismantling one of appellee's telephone lines, and specifically while endeavoring to remove a line of wire from its attachment to a certain pole which he had ascended for that purpose, the pole broke, precipitating appellant to the ground, whereby he suffered serious injuries. This action was brought by him to recover damages on account of such injuries. A trial resulted in a verdict for appellee, on which judgment was rendered and from which this appeal is prosecuted.

Appellant assigns as error the overruling of his motion for a new trial, and under such assignment challenges the sufficiency of the evidence and the correctness of certain instructions given by the court. The facts averred in the complaint essential to ascertaining its theory and to an intelligent comprehension of the questions involved are substantially as follows: Appellant was in appellee's employ as its local telephone manager at Pleasant Lake, in Steuben county. It was his duty to do general work for appellee in and about its exchange at Pleasant Lake, and on its lines extending thence into the adjacent territory, including erecting, dismantling, repairing and rebuilding telephone lines. In doing such work it was frequently necessary for appellant to climb poles supporting appellee's wires. Reasonable care on appellee's part for appellant's safety required that all telephone poles maintained by it as a part of its lines should be solid, free from decay, and sufficiently strong to bear appellant's weight safely when he was required to ascend such poles in the discharge of his duties. On February 17, 1913, appellee directed appellant to take down and remove a line of wire extending from such exchange through the village of Hudson. In said village the line of wire was attached to a pole in front of a residence, to which pole were attached also other wires connecting said ex-

change with a telephone in said residence. In performing his work as directed, it was necessary for appellant to climb to the top of such pole. In obedience to appellee's orders, he did climb to the top of such pole for the purpose of removing therefrom the line of wire which he had been directed to take down. Appellee had negligently permitted such pole to become rotten and defective and was carelessly and negligently maintaining the pole in such condition so that it was not strong enough to bear appellant's weight. While appellant was upon such pole, as aforesaid, in the line of his duty, removing the wire therefrom as directed by appellee, by reason of its defective condition the pole broke and fell, and appellant was thereby thrown to the ground and injured as specifically alleged.

It will be observed that the negligence charged consisted in permitting the pole to become rotten, weak and defective, and in maintaining it in such condition.

The facts respecting appellant's relation to the company and the transaction in which he was injured, as testified to by him, are substantially as follows: Appellant was fifty years old, and had been working for appellee for seven years as manager of the Pleasant Lake exchange. His duties included the building, rebuilding, repairing and dismantling of telephone lines, and looking after the lines connected with the Pleasant Lake exchange. There were about 200 phones connected with that exchange. Appellee's central exchange and principal office were at Angola, in connection with which there was a secretary of the company and also an overseer of lines. When lines extending from the Pleasant Lake exchange were to be built, rebuilt or dismantled, the secretary or overseer at Angola issued general orders to appellant, and he thereupon proceeded to do the work. Two or three years prior to the time when appellant was injured, appellee acquired

from a farmers' company a telephone line, thereafter designated as the "old farmers' line." This line was about five miles west of Pleasant Lake and extended a distance of three and one-half miles into and perhaps through the village of Hudson. It consisted of a single line of wire strung on native poles, such as black ash. Appellee, sometime prior to the time when appellant was injured, had abandoned the use of the line. In the village of Hudson one pole in the line, a black ash nine inches in diameter at the ground and six inches at the top and twenty-one feet high, stood in front of the residence of Mr. Fredericks, a patron of the Pleasant Lake exchange. The wires leading to his home extended from another line used by appellee a distance of about 180 feet across lots to the Fredericks phone, and were attached also to said pole. Several weeks prior to February 20, 1913, appellant received written instructions from the office at Angola to proceed to dismantle the old farmers' line. The work not having been done, the secretary of the company, on February 17, 1913, directed appellant to proceed with the work, and to take the line down before some one got hurt. Appellant, on his own initiative but with the consent of the secretary of the company, made arrangements with a Mr. Norman and a Mr. Zonker to assist in the work, they to receive the poles as compensation. Norman and Zonker were not employes of the company. Appellant, assisted by Norman and Zonker, proceeded to dismantle the old line, appellant being in charge of the work. They commenced at the end of the line remote from Hudson. In doing the work appellant testified that the poles were cut off at or near the surface of the ground. There was other evidence, and the jury so found in answer to an interrogatory that appellant in removing some of the poles broke them off at the surface of the ground by pushing against them. After about

three miles of the line had been dismantled, appellant and his two assistants, on February 20, reached the pole standing in front of the Fredericks residence. Appellant had received no specific instructions respecting this pole. As the Fredericks wire was attached to it, he tested its solidity by striking against it with his hand, and concluded that it was solid and that he would therefore not take it down. He thereupon ascended it by the use of climbers and loosened the wire which he was taking down, whereupon the pole broke and fell, throwing appellant to the ground and injuring him seriously. The pole broke at the surface of the ground because it was decayed at that point.

Appellant was overseer of the lines connected with the Pleasant Lake exchange. Appellant constructed new lines and dismantled old and useless lines only on orders from the central office, but on receiving such orders he took charge of the work and saw that the orders were carried out. His orders on this occasion were general, simply that he tear down the old farmers' line. In erecting new lines and in using old poles for that purpose, he determined their fitness, and in dismantling old lines, he determined for himself whether the poles were sound or unsound. No one on this occasion gave him any information as to whether the poles were sound, but he acted on his own judgment, after testing them by striking against them with his hand. He had had a number of years' experience in telephone line work, both with appellee and other companies. Appellee, in placing him in charge of the work of dismantling lines, did not direct him as to the manner of doing the work. He understood on this occasion that he was to take down the entire line, both wire and poles. He had had wide experience in climbing poles. He was familiar with the work of erecting new lines and of dismantling old lines. This line was being dismantled be-

cause it was old, deteriorated and useless, and the company did not need it. In climbing the pole here appellant acted on his own judgment as to its soundness. Appellant was the exclusive judge as to how to do the work he was ordered to do. He exercised his own judgment on this occasion. Poles usually decay first right at the surface of the ground. He did not examine this pole at the surface of the ground because the ground was frozen. He was superintending the work of dismantling this line. He tested this pole by striking it with his hand, pronounced it safe in his own mind, and then climbed it. It was his duty to determine for himself the question of the safety of the pole, and he was to exercise his own judgment in the work of dismantling this line. Such is appellant's own account of his relation to appellee, and of the circumstances under which he was injured. It is not materially changed or affected by the other evidence in the case. We proceed to consider the sufficiency of the evidence in its relation to the issue of negligence.

The negligence charged is that appellee permitted said pole to become decayed and defective, and maintained it in that condition as a part of the line. There is no doubt that the pole, by reason of its decayed condition, had become defective in common with other poles in the line, and that appellee permitted it to continue in that condition. It remains to be determined, however, whether actionable negligence may be predicated on such facts. A charge of negligence may not be sustained except as based upon a failure to exercise reasonable care in the discharge of a duty. It is elementary that it is the duty of the employer to furnish to the employe a safe place within which to work, and to provide him with proper tools and equipment with which to work. Such duty includes also the duty of making reasonable inspection

and repairs, and of bringing to the knowledge of the
employe the existence of defects and dangers of which
the employer has knowledge, actual or constructive, but
which are not known to the employe, and with a knowl-
edge of which he is not chargeable. A failure to dis-
charge the duties indicated with reasonable care is neg-
ligence. Actionable negligence, however, cannot be
predicated on the mere failure to inspect when
3. inspection would disclose only what was fully
known and appreciated by the servant. 26 Cyc
1136. The duty to furnish a reasonably safe
4. place to work and to use ordinary care to keep
it safe, is, however, a qualified duty. "It does
not extend to all the passing risks that may arise from
short-lived causes, or such as arise in ever-changing
conditions of the safety of the work, * * * or under
circumstances which impose on him (the employe) the
duty of making safe or he is engaged in making safe
the place where he works." *Lehigh, etc., Cement Co.*
v. *Bass* (1913), 180 Ind. 538, 103 N. E. 483, and cases
cited. 26 Cyc 1101. "It is well settled that the rule
requiring the master to furnish his servant a safe place
in which to work does not apply when the work of such
servant consists in making safe the place and conditions
of which complaint is made." *McElwaine-Richards
Co.* v. *Wall* (1905), 166 Ind. 267, 76 N. E. 408. "A
similar qualification of the master's liability is admitted
where the injured servant was hired for the express
purpose of assisting in the repair, demolition or alter-
ation of some instrumentality and the unsafe conditions
from which the injury resulted arose from or were in-
cidental to the work thus undertaken by him." 3
Labatt, Master and Servant (2d ed.) §924. Thus it
is held that the safe-place rule does not apply except
in a qualified sense where the servant is employed to re-
pair a dangerous place in a coal mine by taking down or

shoring up slate likely to fall *(Indiana, etc., Coal Co.* v. *Batey* [1904], 34 Ind. App. 16, 71 N. E. 191), or where the servant is employed to repair damaged cars and the injury is due to the fact that the cars are out of repair *(Flannagan* v. *Chicago, etc., R. Co.* [1880], 50 Wis. 462, 7 N. W. 337; *Brown* v. *Railway Co.* [1898], 59 Kan. 70, 52 Pac. 65).

In denying the right of the employe to rely on the safe-place rule as applied to a situation wherein he is injured by reason of the defects which he was employed to search out and remedy, the court in *Dartmouth, etc., Co.* v. *Achord* (1889), 84 Ga. 14, 10 S. E. 449, 6 L. R. A. 190, said: "The physician might as well insist on having a well patient to be treated and cured, as the machinist to have sound and safe machinery to be repaired. The plaintiff was called to this machinery as infirm, not as whole. An important part of his business was to diagnose the case and discover what was the matter." Of a similar situation, the Supreme Court in *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659, 42 N. E. 359, said: "It is the general rule that it is a duty of the master to supply safe places and appliances for the service of his employes, but it is not understood that this duty requires the master to make a powder house a place of safety or to make railroading as free from danger as hoeing corn."

A study of the foregoing cases and others cited therein will disclose that, when a competent person is employed to repair defects, or to demolish structures or the like, and the perils of the service and the injury for which a recovery is sought were occasioned by the nature of the work being done and which the servant was employed to do, the courts classify such perils as incident to the service and deny a recovery, for the reason, as sometimes expressed, that the

employe assumed the risk. If, however, the perils are incident to the service, the master is not chargeable with negligence and it would seem more logical to deny liability on that ground. As stated in *Bedford Belt R. Co.* v. *Brown, supra:* "Every service has its own peculiar hazards and the law does not hold the master accountable for such hazards as ordinarily and naturally belong to any service." On this subject the following is said in *Martin* v. *Des Moines, etc., Light Co.* (1906), 131 Iowa 724, 735: "If the servant brings an action against his master alleging negligence, and succeeds only in proving that the injury he has sustained was the result of some risk naturally incident to his employment, he fails to recover because he has failed to prove negligence. The very expression, 'risks naturally incident to or inherent in the employment,' exclude *ex vi termini* the idea of negligence; while 'negligence,' as applied to the master, conveys with equal certainty the idea of a risk not incident to or inherent in the employment, but arising from the failure of the master to exercise the degree of care which the law requires of him for the safety of the servant."

Of a like situation, and in commenting on the cases, the following is said in 3 Labatt, Master and Servant (2d ed.), page 2471, note: "The inability of the servant to recover is due to his failure to show any breach of duty on the master's part, and that the so-called doctrine of assumption of the ordinary risks is merely another way of expressing the fundamental principle that there can be no recovery unless there is negligence on the part of the master.' See, also, *Terre Haute, etc., Traction Co.* v. *Young* (1913), 56 Ind. App. 25, 104 N. E. 780; *Scheurer* v. *Banner Co.* (1910), 28 L. R. A. (N. S.), note 1216.

A master may be liable, however, where a servant is injured while making repairs, demolishing struc-

tures, or similar work; as under some circumstances where the servant is working under the supervision and direction of a foreman or other person representing the master, or where the master withholds from the servant information in the possession of the former or with which he is chargeable respecting defects and hazards with a knowledge of which the servant is not chargeable. On this subject, see 3 Labatt, Master and Servant (2d ed.) 2472 *et seq.; Hulse* v. *Home Telephone Co.* (1912), 164 Mo. App. 126, 147 S. W. 1124; *Clark* v. *Telephone Co.* (1910), 146 Iowa 428, 123 N. W. 327. The distinction is recognized in *Corby* v. *Telephone Co.* (1910), 231 Mo. 417, 132 S. W. 712, as follows: "Nor would the master be liable for damages for injuries sustained by the *so-called* servant in consequence of the unsafe place furnished him in which to labor, where the servant is employed not only to repair the defects and make the place safe, but also to manage and control those repairs while they are being made, for the obvious reason that in such case the servant is employed because of his superior knowledge and experience in such matters, and, consequently, acts both for himself and for the master." * * *

"Of course, as before suggested, where two or three linemen are sent out on an equal footing along a telephone line to inspect and make such repairs of defects in the poles and wires as they may discover, or which may have been pointed out to them, the master would not be liable to any one of them for injuries sustained in consequence of said defects for the obvious reason that they would be representing both the company and themselves in such matters, and would be executing the work according to their own plans, knowledge and judgment, and not under the supervision, orders and directions of a foreman representing the master. In

such a case, strictly speaking, the relation of master and servant does not exist—the so-called servant, while he is an employe, being his own boss and not under the charge of nor subject to the orders or control of the employer, nor has he the right to assume that the employer will inspect the premises or that the place to be furnished him in which to work will be reasonably safe, for the reason that he was employed for the express purpose of making the inspection and repairing all defects discovered by him or pointed out by others." See, also, 26 Cyc 1105, 1106.

We proceed to apply the foregoing principles to the facts of this case: Appellant received general orders to dismantle the old farmers' line because it had 7. been abandoned and because it was deteriorated, useless and was likely to fall and injure someone. He understood that the poles were no longer fit to be used in a telephone line, as indicated by the fact that he arranged with his assistants that they should have the poles in consideration of their services in wrecking the line. Appellant was experienced in the work and was in full charge. When engaged in such work as on this occasion, he determined for himself whether a pole was sound or unsound, and acted on his own judgment. He was the exclusive judge as to how to do the work and as to the best manner of accomplishing it. It was his duty under his employment to test any pole before he ascended it and determine its safety for himself. Such in brief are the facts as testified to by appellant, and we fail to discover wherein under such facts the charge of negligence may be sustained. While it is true that the pole in question in common with other poles in the line had become weak and deteriorated and appellee had permitted such poles to continue in its line in such condition, yet appellant was directed to remove the consequent peril by wrecking the line. It was appellee's

duty to its employes and to the public, in order that it might escape a possible liability for actionable negligence in some other relation, to remove the peril by repairing or wrecking the line. As the line was not needed, appellee chose to do the latter, and appellant with full knowledge of the situation and of appellee's purpose undertook to execute them. The Fredericks pole was a pole in the line. Appellant on his own motion determined to let it stand. He had received no instructions to that effect and no specific representations had been made to him respecting its condition. It was in a line over which he had charge as overseer. There is nothing to indicate that the company through any other representative had any knowledge or means of knowledge of this particular pole superior to that of appellant. We conclude that the evidence is not only sufficient to sustain the verdict, but also that no reasonable inference of negligence may be deduced from it.

Something is said in the briefs on the subject of whether this action was brought under the Employers' Liability Act, §8020a *et seq.* Burns 1914, Acts 1911 p. 145. We regard that question as unimportant here, as negligence is the gist of all actions that may be maintained under that act. *Vandalia R. Co.* v. *Stillwell* (1913), 181 Ind. 267, 104 N. E. 289, Ann. Cas. 1916D 258.

Certain instructions that deal with the question of contributory negligence and also with assumed risks are assailed as erroneous. The instructions as a whole in their relation to the former question cannot be approved. The errors, if any, however, were of such a nature as to have no bearing in determining the issue of negligence charged against appellant. On the issue of negligence the jury was correctly charged. We are required to affirm the judgment on the evidence. In addition to cases cited, see *Adams* v. *Central Ind. R.*

*Co.* (1906), 38 Ind. App. 607, 78 N. E. 687; *Neagle* v. *Syracuse, etc., R. Co.* (1906), 185 N. Y. 270, 77 N. E. 1064, 25 L. R. A. (N. S.) 321, and note; *McGorty* v. *Southern, etc., Telephone Co.* (1897), 69 Conn. 635, 38 Atl. 359, 61 Am. St. 62; *Griffin* v. *New York Telephone Co.* (1910), 141 App. Div. 1, 125 N. Y. Supp. 642; *LaDuke* v. *Hudson River Telephone Co.* (1909), 136 App. Div. 136, 120 N. Y. Supp. 171.

Judgment affirmed.

NOTE.—Reported in 116 N. E. 600. Master and servant: liability of master for injuries received by servant in felling tree or pulling down other object, 20 Ann. Cas. 249; injuries to servant, failure to inspect, 26 Cyc 1139; warning and instructing servant, 26 Cyc 1165.